458 So.2d 851 (1984)
CONE BROTHERS CONTRACTING COMPANY and Fidelity & Casualty Company of New York, Appellants,
v.
ASHLAND-WARREN, INC., Appellee.
No. 84-579.
District Court of Appeal of Florida, Second District.
November 9, 1984.
*852 Charles T. Wells of Wells, Gattis, Hallowes & Carpenter, P.A., Orlando, for appellants.
Peter P. Murnaghan and Michael L. Rosen of Holland & Knight, Tampa, for appellee.
CAMPBELL, Judge.
Appellants, Cone Brothers Contracting Company ("Cone Brothers") and Fidelity & Casualty Company of New York, appeal a final summary judgment against only appellant Cone Brothers awarding appellee $183,638.22 in damages and attorney's fees on a claim for breach of contract. We affirm.
Henceforth, in this opinion, we will use the term appellant to refer only to Cone Brothers.
In July 1977, Macasphalt Corporation entered into a contract with the Florida Department of Transportation (DOT) for the construction of improvements and modifications of a portion of Interstate 4 in Orange and Osceola counties. Macasphalt subsequently merged with and became a division of Ashland-Warren, Inc. (Ashland-Warren). When using the term appellee, we will refer to the merged and successor entity, Ashland-Warren. Subsequently, appellee subcontracted with appellant for performance of certain work within the DOT project, including modifications to the Bonnet Creek Bridge.
On February 10, 1979, and again on May 13, 1979, a motor vehicle collided with a temporary "barrier wall" which had been placed near the Bonnet Creek Bridge by appellant in the performance of their contract. As a consequence of the two accidents, appellee and appellant were named as defendants in four personal injury actions in Orange County.
The contract between appellee, as contractor, and Cone Brothers, as the subcontractors, provided in paragraph five of the "Terms and Conditions" as follows:
5. The Subcontractor shall provide and maintain compensation insurance for the protection of his employees, as required by law of an employer and as will protect the Subcontractor from loss or damage because of personal injuries including death to his employees, or any of them; and the Subcontractor shall provide and maintain minimum public liability and property damage insurance in companies acceptable to the Contractor, in such amounts as may be agreed upon; and in the absence of such agreement, as follows:
Public Liability (Including completed operations coverage): Bodily Injury/Property Damage $300,000/$500,000/$100,000
Automotive Public Liability: Bodily Injury/Property Damage $300,000/$500,000/$100,000
The Subcontractor specifically obligates itself to indemnify and protect the Contractor and save it harmless from any and all claims, suits or liabilities for injuries to property, injuries to persons, including death, and from any other claims, suits or liabilities arising out of the performance of the work or in any way occasioned by any act or omission of the Subcontractor or any of its officers, agents, employees or servants or any Subcontractor or other person directly or indirectly engaged by it. All of the insurance policies as hereinbefore provided under this section shall name the Contractor as an additional assured thereunder, shall assume and provide for the Contractor's defense, and shall serve to indemnify and protect the Contractor and save it harmless from all claims, suits or liabilities as set forth in these Terms and Conditions or any of them.
The Subcontractor shall furnish the Contractor with certificates evidencing that such insurance is provided and in full force and effect before starting work and at any other time when requested by the Contractor. All of said certificates *853 shall set forth on the face thereof contractual coverage as required herein. No amendment or cancellation of any of said policies shall be effective until after thirty (30) days notice in writing to the Contractor. (Emphasis added.)
Paragraph six of the "Terms and Conditions" contained the following provision:
The Subcontractor shall indemnify and protect the Contractor and the Owner and save them harmless from any and all loss, damage, costs, expenses and attorney's fees suffered or incurred on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this contract.
After being named a defendant in the personal injury actions, appellee promptly demanded that appellant, or its insurer, undertake Ashland-Warren's defense and cover any liability in accordance with the subcontract. However, that demand was rejected based on the contention that appellee was negligent and, thus, the indemnification clause was unenforceable. The demand was also rejected because appellant had not made appellee a named insured on the liability insurance policy as required by paragraph five of the subcontract. Consequently, appellee was required to retain its own counsel to defend the four lawsuits.
One of those lawsuits ultimately went to trial and resulted in a jury verdict finding that appellant was sixty percent negligent, appellee was twenty-five percent negligent, and the driver of the car was fifteen percent negligent. The other three cases were settled through negotiations which were conducted principally by appellant, acting on behalf of appellee and other defendants, as well as itself. Eventually, appellee was required to pay damages totaling $103,638.22, and incurred attorney's fees totaling over $66,600 in defending the four suits.
In September 1982, appellee instituted an action against appellant, stating three distinct counts for recovery. Count I sought damages, costs and interest based on "contractual indemnity" under paragraphs five and six of the subcontract. Count II sought damages, costs and interest based on "common law indemnity" alleging that the proximate cause of the accidents was appellant's negligence and that appellee's liability was merely constructive or derivative. Finally, Count III sought damages, costs, interest and attorney's fees for "breach of contract" based on appellant's failure to obtain liability insurance making appellee a named insured as required by paragraph five of the subcontract.
Appellant answered generally denying liability and affirmatively defending on the grounds that: (a) the jury verdict finding appellee partially negligent precluded appellee's claim for contractual or common law indemnity in any of the four cases; (b) appellee was negligent in administering the contract or discharging its supervisory duties, thus precluding any recovery under contractual or common law indemnity; and (c) the contract failed to comply with section 725.06, Florida Statutes (1981), which imposes certain restrictions on indemnification provisions in construction contracts. By subsequent amendment, appellant was allowed to plead as additional affirmative defenses that appellee was estopped from asserting the claim for indemnity, had waived its right to claim indemnity, and had released appellant as a result of the settlements of the other lawsuits. Appellee filed replies denying all of appellant's affirmative defenses.
Both parties filed motions for partial summary judgment. Appellant requested partial summary judgment on appellee's claims for contractual indemnity and common law indemnity. On the other hand, appellee sought partial summary judgments on the issue of appellant's liability for breach of contract for failing to obtain liability insurance that included appellee as a named insured.
The trial court conducted a hearing to consider appellant's motion for partial summary judgment on the claims for indemnity and appellee's motion for partial summary judgment on the claim for breach of contract. Acknowledging that its motion was "limited to the contractual indemnity portion *854 contained in Count One," appellant argued that appellee was not entitled to indemnification under the subcontract because: (a) under Florida law, a general indemnification clause in a contract will not protect the indemnitee from liability arising out of its own negligence unless the provision contains specific language expressly evidencing such intent; and (b) under section 725.06, a provision in a construction contract which purports to indemnify a party against liability for its own conduct is unenforceable unless the contract contains a monetary limitation on the extent of the indemnification, and the party indemnified gives a specific consideration to the indemnitor for that protection.
After confirming that appellant's motion was limited to the contractual indemnification claim embodied in Count I, appellee's counsel stated on the record that appellee did not oppose the granting of appellant's motion.
Appellee's counsel then proceeded to argue appellee's motion for partial summary judgment on Count III of the complaint. Appellee premised its argument on the basis that: (a) paragraph five of the subcontract contained, in addition to the general indemnification clause, a provision requiring appellants to obtain liability insurance in specified amounts, which policies "shall name the Contractor as an additional assured thereunder [and] shall assume and provide for the Contractor's defense;" (b) appellant did not dispute the fact that it failed to obtain such liability insurance naming appellee as an insured; and (c) as a consequence of appellant's breach of this contractual obligation, appellee was required to defend that lawsuit and to pay damages that would have otherwise been covered by the liability insurance.
On April 7, 1983, in accordance with appellee's stipulation at the hearing, the trial court entered an order granting appellant's motion for summary judgment on Count I of the complaint, thus resolving the contractual indemnification claim in favor of appellant. The trial court then entered an order granting appellee's motion for partial summary judgment on Count III as to liability only, specifically finding that appellant did not purchase liability insurance naming appellee as an additional named insured as required by the contract.
Thereafter, appellee served a motion for partial summary judgment on damages with respect to Count III, asserting that the sums paid by appellee in the four lawsuits were undisputed and were the proximate result of appellant's breach of its contractual obligation to obtain insurance for appellee. The trial court granted the motion.
With the issues of liability and damages for breach of contract resolved in appellee's favor, the only matter remaining for disposition on Count III was the request for attorney's fees. Appellant moved to strike this claim or to grant summary judgment in its favor, contending that appellee was not entitled to attorney's fees under the contract or pursuant to any statutes. Appellant argued that appellee's right to attorney's fees under paragraph six of the subcontract should be limited to those associated with the defense against the claims of the injured third parties, and should not include fees incurred in prosecuting the present action against appellant on the subcontract.
The trial court denied appellant's motion and concluded that appellee was entitled to attorney's fees pursuant to paragraph six of the contract for defense of the personal injury actions, as well as fees resulting from the action for breach of contract.
The parties subsequently stipulated that a reasonable fee award to appellee would be $80,000, of which $65,000 was attributable to the defense of the four lawsuits necessitated by appellant's breach of contract, and $15,000 was attributable to the prosecution of the contract claim against appellants.
The trial court entered a final judgment against appellant, awarding appellee a total of $183,638.22 in damages and attorney's fees.
Appellant raises four points on appeal:

*855 I. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEE ON ITS CLAIM FOR BREACH OF CONTRACT?
II. WHETHER SECTION 725.06, FLORIDA STATUTES (1983) IS IRRELEVANT TO THIS CASE BECAUSE APPELLEE WAS AWARDED SUMMARY JUDGMENT BASED ON BREACH OF CONTRACT, NOT INDEMNIFICATION?
III. WHETHER THE TRIAL COURT ERRED IN LIMITING DISCOVERY IN RULING THAT APPELLEE WAS NOT REQUIRED TO PRODUCE PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS?
IV. WHETHER THE TRIAL COURT ERRED IN AWARDING APPELLEE ITS ATTORNEY'S FEES IN THIS ACTION TO RECOVER FOR APPELLANT'S BREACH OF THE SUBCONTRACT?
Because we affirm the trial court on points I, II and IV, point III is rendered moot.
In support of its first point, appellant argues that the decision in this action should be controlled by the supreme court opinion in University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973). The contractual provision in that case provided:
Section II, INDEMNITY-LIABILITY INSURANCE. Tenant shall indemnify and save harmless the landlord from and against any and all claims for damages to goods, wares, merchandise, and property in and about the demised premises and from and against any and all claims for any personal injury or loss of life and about the demised premises.
Tenant shall maintain in full force, during the term of this lease, a policy or policies of comprehensive general liability insurance, in force, reasonably satisfactory to the landlord, written by one or more responsible insurance companies, licensed to do business in the State of Florida which will insure Tenant and Landlord. The coverage under such insurance shall not be less than $100,000 for any one injury (including death) and not less than $300,000 for any one accident (including death) and not less than $10,000 for property damage. (Emphasis supplied.)
The supreme court refused to enforce that indemnity clause holding that a contract for indemnity will not be sustained where it purports to indemnify the indemnitee from liability resulting from his own negligent acts, unless such intention is expressed in clear and unequivocal terms. In the later case of Charles Poe Masonry, Inc. et al v. Spring Lock, etc., et al., 374 So.2d 487 (Fla. 1979), the supreme court extended University Plaza to include cases in which the indemnitor and indemnitee are jointly and severally liable.
However, as appellee points out, in this case, appellant's liability was not based on the indemnity clause, but on its breach of contract by failing to make appellee a named insured. The contract in University Plaza also contained a clause requiring the proposed indemnitee to be insured by a policy of insurance maintained by the indemnitor. However, in University Plaza, the policy of insurance insuring the indemnitee was actually issued. The distinguishing fact is that the trial court there found, and the supreme court affirmed, that the policy of insurance there only applied when the indemnitor, or named insured, was liable and did not extend to liability of the indemnitee.
In the case before us, the contract calls for appellee to be named "as an additional assured thereunder." Thus, the contract calls for insurance policies that not only insured appellant for any liabilities it might have to appellee, but provided that appellee would also be insured to protect it "from all claims, suits or liabilities."
In regard to appellant's second point, we conclude that section 725.06, Florida Statutes (1977), which was the statute which would be applicable to a contract *856 entered into in 1977, is clearly a limitation upon indemnification and has no applicability to a contract provision relating to insurance for liabilities arising out of the performance of construction contracts. Since appellee's cause of action grew out of a breach of such a contract providing for insurance, section 725.06 is not applicable.
Finally, we conclude that the trial court's award of attorney's fees was correct and appellant must fail on its fourth point as well. The contract provision requiring appellant to pay all attorney's fees "incurred on account of any breach of ... any ... provision ... of this contract" is clear and unambiguous.
Affirmed.
RYDER, C.J., and LEHAN, J., concur.