**Toshiko PICKHOVER, an individual and personal representative of the Estate of John W. Pickhover; Catherine Pickhover, an individual; and Gloria Pickhover, an individual, Plaintiffs,**

v.

**SMITH'S MANAGEMENT CORPORATION, a Utah corporation; Smith's Food King Properties, a Utah corporation; Dee's, Inc., a Utah corporation; Young Electric Sign Company, a Utah corporation; and Image National, Inc., an Idaho corporation, Defendants and Appellant,**

v.

**MARVEON INC., a Utah corporation, Defendant and Respondent.**

**No. 880193-CA.**

Court of Appeals of Utah.

Feb. 10, 1989.

Rehearing Denied May 1, 1989.

Gary D. Stott, Michael K. Mohrman (argued), Richards, Brandt, Miller & Nelson, Salt Lake City, for defendant/appellant, Young Elec. Sign Co.

Robert H. Henderson (argued) Snow, Christensen & Martineau, Salt Lake City, for defendant/respondent, Marveon, Inc.

Mark O. Van Wagoner, Lewis T. Stevens, Phyllis J. Walton, Van Wagoner & Stevens, Salt Lake City, for Pickhovers.

Roger H. Bullock, Strong & Hanni, Salt Lake City, for Smith's Management and Smith's Food King.

Paul H. Matthews, Hanson, Dunn, Epperson & Smith, Salt Lake City, for Image National.

Paul S. Felt, Ray, Quinney & Nebeker, Salt Lake City, for Dee's, Inc.

## AMENDED OPINION

Before DAVIDSON, GREENWOOD and ORME, JJ.

ORME, Judge:

This appeal involves a dispute between two defendants in a wrongful death action, Young Electric Sign Company ("YESCO") and Marveon, Inc. YESCO appeals the trial court's order holding YESCO responsible for any judgment against Marveon in the wrongful death action. We affirm.

## FACTS

YESCO and Marveon were competitors in the commercial sign business until YESCO purchased Marveon's assets in August of 1981. To effect this transaction, a written purchase agreement was entered into by the parties. Section 2(a) of the purchase agreement provides that "[YESCO] agrees ... to provide, at its expense, insurance coverage adequate to fully protect [Marveon] against property damage ... or personal injury or death claims arising out of the ownership, maintenance, use, service, transportations [sic], or installation of [signs] in a minimum amount of One Mil-

lion Dollars ($1,000,000.00)." YESCO failed to provide such insurance coverage for Marveon.

On January 5, 1985, John Pickhover was killed when a sign at a Smith's Food King in Sandy, Utah, fell and struck him. The sign had been installed by Marveon in 1978. This wrongful death action was subsequently brought by Pickhover's widow against YESCO, Marveon, and a number of other defendants.

Marveon cross-claimed and immediately moved for summary judgment against YESCO. Citing section 2(a) of the purchase agreement, Marveon argued that YESCO was obligated to provide insurance coverage adequate to protect Marveon from any liability arising from the installation of the sign, at least to the extent of one million dollars. Marveon sought a determination that YESCO was liable, in the event that judgment be entered against Marveon, because YESCO failed to provide the insurance policy as required by the purchase agreement.

The trial court granted Marveon's motion on October 31, 1986, before any judgment had been rendered in the underlying wrongful death action.[1] The trial court ruled that Marveon was entitled to indemnification by YESCO for up to one million dollars, the amount specified in the purchase agreement.

YESCO challenges the trial court's ruling and raises only one issue on appeal: Does section 2(a) of the purchase agreement require YESCO to provide an insurance policy covering the financial consequences of Marveon's own negligence?[2] YESCO argues that, under Utah law, an indemnity contract purportedly requiring one party to assume responsibility for the

financial consequences of another's negligence must be strictly construed against such coverage absent clear and unequivocal language. Furthermore, YESCO claims that an agreement to provide insurance for the benefit of another, such as the agreement contained in section 2(a) of the purchase agreement, is analogous to an indemnity agreement and, therefore, the same standard of strict interpretation is applicable. Accordingly, YESCO asserts that because the purchase agreement does not expressly provide that the insurance coverage to be furnished will cover Marveon's own negligence, YESCO is not liable to Marveon because any judgment against Marveon in the underlying wrongful death action would necessarily be based on Marveon's own negligence.

## INDEMNITY AGREEMENTS

■ YESCO is correct in asserting that Utah courts apply the rule of strict construction when confronted with an indemnity agreement and the claim that, through such an agreement, one party has shifted financial responsibility for its own negligence onto the other party. *See, e.g., Shell Oil Co. v. Brinkerhoff–Signal Drilling Co.,* 658 P.2d 1187, 1189 (Utah 1983); *Union Pac. R.R. v. Intermountain Farmers Ass'n,* 568 P.2d 724, 725–26 (Utah 1977); *Howe Rents Corp. v. Worthen,* 18 Utah 2d 263, 420 P.2d 848, 849 (1966); *Union Pac. R.R. v. El Paso Natural Gas Co.,* 17 Utah 2d 255, 408 P.2d 910, 913–14 (1965). *See also Barrus v. Wilkinson,* 16 Utah 2d 204, 398 P.2d 207, 208 (1965). The strict construction rule seems to have arisen primarily to appease the concern that one who is not financially responsible for the consequences of his or her own negligence will

---

1. Eventually, Mrs. Pickhover's wrongful death action was successful. Relief in her favor included a judgment against Marveon based on its negligent installation of the Smith's Food King sign that killed her husband.

2. Marveon also challenges this court's jurisdiction. After entering judgment in Marveon's favor and against YESCO, the trial court certified its judgment as final pursuant to Utah R.Civ.P. 54(b). YESCO filed its appeal based on this certification. Marveon claims the trial court

erred in certifying its order under Rule 54(b) because it did not wholly dispose of Marveon's claim against YESCO. However, Marveon previously moved for dismissal on this very ground. That motion was denied by the Utah Supreme Court before the case was transferred to this court. We are not inclined to disturb the Supreme Court's disposition of this issue and reject Marveon's jurisdictional challenge. *See Conder v. A.L. Williams & Assocs.,* 739 P.2d 634, 636 (Utah Ct.App.1987).

be less careful in his or her behavior toward others. *See, e.g., Union Pac. R.R. v. El Paso Natural Gas Co.*, 408 P.2d at 913. Under the strict construction rule, a party is contractually obligated to assume ultimate financial responsibility for the negligence of another "only when that intention is clearly and unequivocally expressed." *Id.* at 914. "But the presumption is against any such intention, and it is not achieved by inference or implication from general language...." *Id.*

## RECENT FEDERAL CASES

YESCO is also correct in asserting that the federal courts, endeavoring to apply Utah law, have held that "[a] requirement to provide insurance is governed by the same rule of [strict] construction as an indemnification provision which seeks indemnification for the indemnitee's own negligence." *Freund v. Utah Power & Light Co.*, 625 F.Supp. 272, 280 (D.Utah 1985) (citing *Kennecott Copper Corp. v. General Motors Corp.*, 730 F.2d 1380 (10th Cir.1984)). Indeed, the Tenth Circuit addressed the precise issue in *Kennecott Copper* and held that:

> [Defendant] has tried to distinguish the indemnification cases by arguing that there is a difference between an agreement to purchase insurance to cover [another's] own acts and an indemnification agreement. There is no support for that position in Utah cases. *See Union Pacific Railroad*, 568 P.2d at 725, and cases cited therein. It is clear from reading the Utah cases that Utah looks to the purpose of the agreement. If the purpose is to insure [another] against its own acts, that constitutes an indemnification agreement, and the presumptions against it prevail in the absence of a clearly expressed contrary intent.

730 F.2d at 1382. However, *Kennecott Copper* misconstrues Utah law.

The Utah cases referred to by the Tenth Circuit in *Kennecott Copper* do not support its conclusion that contracts to provide insurance are subject to the strict construction rule. Those cases involve classic indemnity provisions and make no attempt to analogize such provisions to an agreement to provide insurance. *See, e.g., Union Pac. R.R. v. Intermountain Farmers Ass'n*, 568 P.2d at 725; *Howe Rents Corp.*, 420 P.2d at 849; *Barrus*, 398 P.2d at 208. We are not cited to any Utah case actually supporting the position endorsed in *Kennecott Copper* and *Freund*. Our own research has not revealed such a case. The issue appears to be one of first impression for the appellate courts of this state.

■ We are convinced that an agreement to provide insurance for another's benefit, while analogous in some respects to an agreement to indemnify another for the consequences of its own negligence, is not subject to the strict construction rule. Our conclusion is prompted by the emerging trend to limit application of the strict construction rule, analysis of the function served by an agreement to provide insurance, and well-reasoned cases from other jurisdictions.

## TREND TO LIMIT RULE

It appears that the contemporary judicial trend is to limit the application of the strict construction rule. Especially given the judicial history of the rule in Utah, we believe the law of Utah should develop consistent with this trend.

Early on, the Utah Supreme Court stated "[i]t is very doubtful that defendant could relieve itself by contract from its own negligence. Ordinarily, such contracts are contrary to public policy." *Jankele v. Texas Co.*, 88 Utah 325, 54 P.2d 425, 427 (1936). A generation later, the Court moderated its view and was able to hold that indemnity contracts, even where they are for the purpose of providing relief from one's own negligence, are valid if they pass muster under the strict construction rule. *See, e.g., Walker Bank & Trust Co. v. First Sec. Corp.*, 9 Utah 2d 215, 341 P.2d 944, 947 (1959). This change in Utah judicial attitude may well have been prompted by the position adopted by the majority of jurisdictions upholding indemnity provisions, which was no doubt attributable to the ever-increasing use of liability insurance. *See Manson–Osberg Co. v. State,*

552 P.2d 654, 659 (Alaska 1976). Courts recognized that many insurance contracts effectively shift the financial burden for the insured's own negligence onto the insurer. Accordingly, it would make little sense to altogether prohibit indemnity agreements intended to do the same, on public policy grounds, while embracing their insurance agreement cousins.

Now, coming full circle, courts are beginning to change their view of the strict construction rule. At least one jurisdiction has all but abandoned the rule. *See C.J.M. Constr. Inc. v. Chandler Plumbing & Heating, Inc.*, 708 P.2d 60, 64 (Alaska 1985) ("It is no longer necessary under Alaska law that an indemnity clause contain words specifying indemnity for the indemnitee's own negligence."); *Manson–Osberg Co. v. Alaska*, 552 P.2d 654, 659 (Alaska 1976) ("In modern commerce, indemnity clauses are no longer so unusual as to require such specific mention of the indemnitee's conduct as being within the scope of the indemnifying obligation."). Other courts have moderated their application of the rule. *See, e.g., Bartlett v. Davis Corp.*, 219 Kan. 148, 547 P.2d 800, 808 (1976) ("Although recognizing the [strict construction] rule, a great majority of courts hold that it is not necessary that the agreement contain specific or express language covering the [indemnitee's] negligence, if the intention to afford such protection clearly appears from the contract, the surrounding circumstances and the purposes and objects of the parties."); *Simons v. Tri–State Constr. Co.*, 33 Wash.App. 315, 655 P.2d 703, 708 (1982) (clauses purporting to indemnify a party for its own negligence are to be strictly construed

against such coverage, but the clause must be viewed realistically to recognize the intent of the parties to allocate the cost or expense of certain risks among themselves). Even if we were more enamored of the strict construction rule, we would be reluctant to expand the rule's application to agreements to provide insurance while other jurisdictions are restricting its application.

## FUNCTIONAL CONSIDERATIONS

Two aspects of the typical agreement to provide insurance support our conclusion. First, a contractual entitlement to insurance provided by another does not encourage the beneficiary of that agreement to act any more irresponsibly than the insurance policy itself would. Of course, Utah cases have not applied the indemnity-type strict construction rule to actual insurance policies.[3] In our view, it would be irrational and inconsistent to apply the rule to agreements to provide insurance simply because the insured has negotiated with a third party to pay the insurance premium. An agreement to provide insurance merely allocates an economic burden on one party to make a payment to protect another after the parties have ultimately decided "to shift the risk of loss ... upon an insurer." *Steamboat Dev. Corp. v. Bacjac Indus.*, 701 P.2d 127, 128 (Colo.App.1985). Thus, we think an agreement to provide insurance is more analogous to an insurance contract, to which the strict construction rule does not apply, than to an indemnity agreement.

Second, our conclusion advances the bargained-for expectations of the parties. It

---

**3.** On the contrary, the "strict construction" rule that is employed in connection with insurance policies accomplishes just the opposite result. Any ambiguity concerning the scope of insurance is construed *in favor* of coverage. *See, e.g., Fuller v. Director of Finance*, 694 P.2d 1045, 1047 (Utah 1985) ("An insured is entitled to the broadest protection he could have reasonably understood to be provided by the policy."); *Williams v. First Colony Life Ins. Co.*, 593 P.2d 534, 536 (Utah 1979) (ambiguity in insurance contract must be construed in favor of insured); *Dienes v. Safeco Life Ins. Co.*, 21 Utah 2d 147, 442 P.2d 468, 471 (1968) (no ambiguous state-

ment may be enforced against an insured). *See also Colard v. American Family Mut. Ins. Co.*, 709 P.2d 11, 14 (Colo.App.1985) (if an insurance company intends to exclude from coverage damage resulting from the insured's own negligence, it must do so clearly and unambiguously); *American Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev.1986) (insurance contracts are construed to accomplish the object of providing indemnity to the insured); *Weldon v. Commercial Union Assurance Co.*, 103 N.M. 522, 710 P.2d 89, 91 (1985) ("When an ambiguity exists, the court must construe the policy so as to sustain indemnity.").

is commonly understood that insurance of the type contemplated in the purchase agreement is purchased to protect the named insured from the financial consequences of its own negligence. An agreement to purchase insurance does not make the party agreeing to provide the insurance an indemnitor. Rather,

> an agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one ... agrees as part of his or its [contractual] duties to provide insurance, that the insurance will protect both of them regardless of the cause of the loss.... If that were not their intent, each would provide his or its own protection....

*South Tippecanoe School Bldg. v. Shambaugh & Son, Inc.*, 182 Ind.App. 350, 395 N.E.2d 320, 327 (1979) (quoting *Morsches Lumber v. Probst*, 180 Ind.App. 202, 388 N.E.2d 284, 286–87 (1979)).

## SUPPORTIVE CASE LAW

Our conclusion is also supported by recent cases from other jurisdictions. These decisions treat an agreement to provide insurance as a matter of simple contract and not as a matter of indemnity. *See, e.g., Steamboat Dev. Corp.*, 701 P.2d at 128; *Cone Bros. Contracting Co. v. Ashland–Warren, Inc.*, 458 So.2d 851, 855–56 (Fla.App.1984), *cert. denied*, 464 So.2d 554 (Fla.1985); *Hooks v. Southeast Constr. Corp.*, 538 F.2d 431, 433 (D.C.Cir.1976); *Aetna Casualty & Sur. Co. v. L.K. Comstock & Co.*, 488 F.Supp. 732, 743 (D.Nev. 1980); *Alyeska Pipeline Serv. Co. v. H.C. Price Co.*, 694 P.2d 782, 785–86 (Alaska 1985); *Ramsey v. Marutamaya Ogatsu Fireworks Co.*, 72 Cal.App.3d 516, 140 Cal. Rptr. 247, 258 (1977). Two of these cases are particularly compelling and merit further discussion.

In *Cone Bros. Contracting*, the parties had contractually agreed that a subcontractor would indemnify the contractor. The subcontractor *also* agreed to purchase an insurance policy naming the contractor as an insured party. As in this case, the insurance policy was not obtained. After a personal injury action was brought against the contractor, it sued the subcontractor. The trial court dismissed the contractor's claim based on the indemnification clause, but entered judgment against the subcontractor for breaching the agreement to purchase insurance for the contractor. 458 So.2d at 854. The subcontractor appealed and argued that the agreement to provide insurance did not 1) expressly provide that the contractor was to be protected from liability for its own negligence or 2) comply with a Florida statute requiring certain terms to be included in a contract purporting to indemnify one for its own negligence. *Id.*

The Florida Court of Appeals rejected both arguments and upheld the trial court's imposition of liability on the subcontractor for breaching the agreement to purchase insurance. *Id.* at 855–56. In affirming, the court distinguished the indemnity clause from the contractual obligation to provide insurance. The court held that while the contractor's claim based on the indemnity provision was properly dismissed pursuant to the strict construction rule, there was no merit in the subcontractor's contention that the claim for breach of the agreement to provide insurance must likewise be dismissed. Further distinguishing the two claims, the court held that the Florida statute "is clearly a limitation upon indemnification and has no applicability to a contract provision relating to insurance...." *Id.* at 856.

In *Steamboat Dev. Corp. v. Bacjac Indus.*, 701 P.2d 127 (Colo.App.1985), a property owner agreed to provide an insurance policy in favor of a contractor working on the owner's property. The agreement stated only that the "insurance shall include the interest of the ... contractor." *Id.* at 128. The agreement did not expressly provide that the insurance would protect the contractor from the financial consequences of its own negligence. Nonetheless, the Colorado Court of Appeals affirmed the trial court's ruling that the owner could not recover damages arising from the contractor's alleged negligence as the owner had

"breached the contract by failing to obtain all risk insurance in favor of the contractor," *id.*, which would have covered the owner's claim.

## CONCLUSION

For the foregoing reasons, we reject YESCO's contention that the strict construction rule applies to agreements to purchase insurance for another's benefit. We hold that the rule applies only to indemnity provisions where the indemnitee seeks indemnification for the consequences of its own negligence. If a party contractually agrees to purchase insurance for another, the agreement is to be construed under general contract principles [4] and, if the insurance is not obtained, the party is liable for breach of contract.

■ Applying this analysis to section 2(a) of the purchase agreement, it is clear that both YESCO and Marveon believed, understood, and contractually agreed that YESCO would provide insurance coverage to protect Marveon from all pertinent claims, including those resulting from its own negligence. The provision is couched in broad terms: YESCO will "provide, at its expense, insurance coverage adequate to fully protect [Marveon] against property damage ... or personal injury or death claims arising out of the ownership, maintenance, use, service, transportations [sic], or installation of [signs] in a minimum amount of One Million Dollars ($1,000,000.00)." YESCO is able to suggest no set of circumstances where that provision would be of any real benefit to Marveon if the policy did not cover Marveon in a case like the instant one. *Cf. Waterway Terminals Co. v. P.S. Lord Mechanical Contrac-*

*tors*, 242 Or. 1, 406 P.2d 556, 566 (1965) ("It cannot be assumed that in negotiations for a contract a party knowingly asks for something which would be of no value to him.").

■ Marveon sold its assets to YESCO and left the sign business. As part of the arrangement, Marveon desired insurance protection of the most comprehensive sort, including, to the extent possible, for past acts of negligence not yet manifested. Section 2(a) merely placed the economic burden to purchase the insurance on YESCO as part of the consideration for Marveon's assets. YESCO breached its agreement and is liable to Marveon for that breach. Although YESCO sought to raise at oral argument the legal effect on Marveon's awardable damages of other insurance Marveon apparently had, such insurance is not in the record before us. The argument was not raised below, is inconsistent with the finality certification of Marveon's judgment which YESCO obtained, and is beyond the scope of the single issue framed by YESCO on appeal. On the record before us, the judgment in Marveon's favor is entitled to affirmance.[5]

The judgment is affirmed. The parties shall bear their own costs of this appeal.

DAVIDSON and GREENWOOD, JJ., concur.

---

4. Under different facts, the lack of explicit language clearly indicating an intent to provide coverage for the insured's own negligence may leave open the question of whether such coverage was intended. However, such ambiguity would be resolved through the ordinary rules of contract interpretation rather than by invoking the strict construction rule. *See generally Wilburn v. Interstate Electric*, 748 P.2d 582, 585–86 (Utah Ct.App.1988).

5. We do not suggest that the presence of other insurance is irrelevant in such cases. In an

action for breach of a contract to provide insurance, the measure of general damages is typically the amount the policy would have paid had it been obtained. *See, e.g., PPG Indust. v. Continental Heller Corp.*, 124 Ariz. 216, 603 P.2d 108, 113–114 (1979). That amount could readily be affected by the existence of two or more policies (including policies of insurance which should have been obtained as contractually required) providing coverage for the same loss. *See, e.g.,* Utah Code Ann. § 31A–21–307(2) (1986).