542 So.2d 382 (1989)
B & H CONSTRUCTION & SUPPLY CO., INC., a Florida Corporation; St. Paul Fire & Marine Insurance Co., a Foreign Corporation, Appellants/Cross Appellees,
v.
The DISTRICT BOARD OF TRUSTEES OF TALLAHASSEE COMMUNITY COLLEGE, FLORIDA, a Public Body Corporate, Appellee/Cross Appellant.
No. 88-446.
District Court of Appeal of Florida, First District.
April 6, 1989.
*384 Julie K. Hilton of Hilton, Hilton, Kolk & Laing, P.A., Panama City, for appellants/cross appellees.
J. Robert McClure, Jr. and Donald E. Hemke of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellee/cross appellant.
BARFIELD, Judge.
In this case, B & H Construction and Supply Co., Inc., ("B & H"), appeals from a final judgment which awarded The District Board of Trustees of Tallahassee Community College, ("TCC"), attorney's fees under a construction contract. B & H challenges the propriety of the award and reasonableness of the amount of the award. TCC cross appeals, challenging the trial court's denial of attorney's fees incurred prior to the arbitration demand and subsequent to the arbitration award. TCC also challenges the trial court's refusal to modify the arbitration award, and the trial court's refusal to tax certain costs against B & H. We affirm the final judgment awarding contractual attorney's fees to TCC. We reverse and remand the order denying TCC's attorney's fees incurred subsequent to the arbitration for services rendered in litigating entitlement to the award of attorney's fees. We also remand for clarification of the trial court's order denying costs incurred by TCC for services rendered by its expert who testified as to the amount of reasonable attorney's fees.

I.
In May 1982, B & H contracted with TCC to build the "Lifetime Sports Complex" on the TCC campus. After two years of construction, disputes arose concerning the performance and completion of the project. In March 1986, TCC accepted the project as substantially complete and began preparation for final close-out. By written memorandum, TCC president Dr. James Hinson recommended to the Board of Trustees that it approve final item changes, including contract adjustments, time extensions and liquidated damages. Hinson reported that the balance on the contract was $405,655, and that the contract adjustments totalled $394,296.45.[1] In May 1986, former B & H attorney, J. Michael Huey, responded to Hinson's recommendation with a written offer of settlement for $306,086. TCC counter-offered to settle for $100,000, which B & H rejected.
On July 14, 1986, B & H filed a demand for arbitration under the contract with the American Arbitration Association ("AAA"). B & H had pending other arbitrations with subcontractors on the project and filed a motion to consolidate the TCC arbitrations with the other proceedings.[2] On July 30, 1986, TCC filed an action against B & H and its surety, St. Paul Fire and Marine Insurance Co., seeking a declaratory judgment, an order compelling arbitration, and an order enjoining consolidation with the other arbitration proceedings. B & H filed a counterclaim against TCC and a third party claim against subcontractors Birdair and Francis, to compel arbitration and consolidate all the arbitration proceedings. B & H also filed a motion for a temporary injunction seeking to enjoin the Birdair arbitration proceeding pending resolution of its counterclaim and third party complaint against TCC. In August 1986, the circuit court entered a temporary injunction order prohibiting the consolidation of the arbitration proceedings on the basis of the AAA's refusal to consolidate.
*385 In October, 1986, the circuit court entered a consent order wherein TCC and B & H agreed to arbitrate their dispute independently of the AAA and without joinder of the subcontractors. The circuit court retained jurisdiction over the parties, the subject matter and the arbitration proceeding. A tri-partite panel was picked; TCC selected Mr. William M. Bishop, and B & H selected Mr. A.O. White, as arbitrators; both parties selected retired circuit court Judge Ben C. Willis to serve as umpire. In December 1986, the parties filed specific claims with the panel, TCC requesting $1.7 million in damages, and B & H requesting $1.4 million in damages.
The panel entered its award on February 17, 1987. It determined that the unpaid balance on the contract was $405,655 and found that B & H was responsible for 278 days delay in completing the work, which under the contract amounted to $139,000 in liquidated damages, but denied TCC's claim for loss of revenue and for additional architect fees. The panel found that also TCC breached parts of the contract, including various delays and refusals to approve changes due to unforeseen conditions, which resulted in direct job costs to B & H. However, the panel rejected B & H's claim for attorney's fees as having no basis in contract or statute. The panel awarded B & H a net amount of $377,502.42. The panel ordered each party to bear its own costs, and found that TCC's claim for contractual attorney's fees was a matter for the court to decide.
Both parties filed requests for clarification and modification of the award.[3] Various responses and more motions were filed. In May 1987, the umpire entered an order on the post-award motions, finding that he had to resolve differences between the two arbitrators in that Mr. White had voted to deny all motions to modify the award while Mr. Bishop had concluded that there was some merit to TCC's claim that there was a $9,952.68 discrepancy evident in the award. Mr. White had concluded that the discrepancy was not "an evident miscalculation of figures" but rather that the panel had compromised to resolve early differences between B & H's claim for direct job costs and TCC's claim for architect fees. The umpire concurred with Mr. White and denied all post-award motions (except to correct a clerical mistake).
In June 1987, B & H filed a motion for confirmation of the arbitration award with the circuit court. TCC filed an answer and consolidated motions for post-arbitration award relief, seeking assessment of attorney's fees and costs against B & H, renewing its request for declaratory judgment, and requesting a reduction of the arbitration award based on the alleged $9,952.68 discrepancy. At the hearing on the motions, B & H president Gary Bailey testified that TCC rejected B & H's May 1986 settlement offer of $306,000 and instead counter-offered for $100,000 which Bailey declined.[4] Bailey testified that a day before the arbitration proceedings began, TCC's attorney, Robert McClure, visited the B & H office and offered to settle for $201,000 but Bailey declined that offer too. Bailey denied ever responding to McClure with an offer to settle for $600,000.[5] In regard to specific disputes at the construction site, Bailey testified that in early 1984, B & H officials had advised TCC's architect that there might be a problem with painting the pool at the Sports Complex because of unanticipated moisture build-up. B & H proposed to plaster the pool instead of painting it, and even offered to do it for free, but TCC delayed the decision for two years until January 1986, when the pool was plastered, solving the moisture problem.
*386 In August 1987, the circuit court entered an order confirming the arbitration award. The court found that the following provision of the construction contract authorized attorney's fees:
In the event the architect, contractor, subcontractors, materialmen, or manufacturers breach this contract or the specifications, and the Owner is required to take legal action to resolve the breach, or to recover any monies which may be due hereunder, then, and in those events, the architect, contractor, subcontractors, materialmen, or manufacturer, individually or collectively, shall pay all costs for such legal action or collection, including a reasonable attorney's fee.
The court found that there was no statute or contract provision which authorized attorney's fees for services rendered in the arbitration proceeding, but that both parties requested arbitration; that from the time of B & H's demand for arbitration, TCC had to take legal action to resolve B & H's breach; that TCC was the prevailing party because it had reduced the original claim against it and successfully resisted the consolidation of arbitration originally sought by B & H; that neither TCC nor B & H could be considered the prevailing party in the proceedings subsequent to the award; and, that the hearing was continued for the sole purpose of determining the amount of TCC's entitlement to attorney's fees. The circuit court awarded B & H $377,502.42 with interest from February 17, 1987, (the date of the arbitration award), until paid. The court also ordered that each party bear their own costs incurred after February 17, 1987, and before October 10, 1986, (entry of consent order); and, that the taxing of costs between those dates was controlled by the award. The court found that B & H was liable to TCC for attorney's fees in an undetermined amount and it dissolved the prior temporary injunctions.
At the hearing on the amount of reasonable attorney's fees, TCC expert attorney Davisson Dunlap testified that the hourly rate and hours charged by TCC attorneys were reasonable and that the fees should total, at the minimum, $130-140,000. He also testified that he had considered the results of the litigation and found that TCC had obtained a positive recovery because it had defeated a $1.4 million claim, while B & H had obtained a negative result, i.e., it recovered less than the balance owed it on the contract. However, he did not consider the various settlement offers in rendering this opinion. At the hearing, Dunlap examined the settlement offer made by B & H attorney Huey and found that it was not an offer of judgment as contemplated by Fla. R.Civ.P. 1.442 because it did not state the B & H would allow TCC to take judgment against it and that the amount was not clear, i.e., there was no bottom line figure.
In January 1988, the circuit court entered its final judgment for attorney's fees, finding that the efforts by the parties to compromise and settle their claims never produced an unequivocal offer of judgment as contemplated by rule 1.442. The court determined that substantially all of the work performed by TCC's attorney subsequent to the demand for arbitration was a result of B & H's breach of contract; that 700 hours represented the time reasonably expended by TCC's attorney and $87.50/hr. was a reasonable hourly rate; that the representation provided by TCC's attorney precluded the attorney from other employment; and, that the contract between TCC and its attorney was not contingent. The trial court stated that TCC "was successful in the prosecution of some claims and unsuccessful in others but the arbitration demanded by the defendant [B & H] and the consent order referring the matter to arbitration required the litigation of many issues and the time spent on the successful claims cannot be separated from that spent on the unsuccessful claims." The court found that TCC was not entitled to recover the fee it paid its expert witness Dunlap, who testified as to the amount of reasonable attorney's fees. The final award on attorney's fees was $61,250.

II.

B & H APPEAL
B & H's first point on appeal is that the trial court erred in awarding contractual *387 attorney's fees to TCC when TCC also breached the contract. B & H contends that in order for a party to be indemnified for attorney's fees when it has breached a contract, the indemnity provision must set forth "in clear and unequivocal terms" the intent of the parties to indemnify against the indemnitee's own wrongful act, and general language indemnifying a party for "any and all claims" is insufficient, citing Charles Poe Masonry, Inc. v. Spring Lock Scaffold Rental Equipment Co., 374 So.2d 487 (Fla. 1979), and University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507 (Fla. 1973).[6]
A contractual attorney's fee provision must be strictly construed. Keys Lobster v. Ocean Divers, 468 So.2d 360 (Fla. 3d DCA 1985). A trial court has the discretion to deny contractual attorney's fees if the party seeking fees is unsuccessful on the merits of its claim. Singer v. Shannon & Luchs Co., 779 F.2d 69 (D.C. Cir.1985); see First Atlantic Bldg. Corp. v. Neubauer Constr. Co., 352 So.2d 103 (Fla. 4th DCA 1977). TCC was successful in proving that B & H breached the contract. The provision authorizing attorney's fees to TCC is clear and unambiguous. It is a unilateral provision which purports to hold TCC harmless for fees incurred as a result of B & H's breach of the contract. See Cone Bros. Contracting Co. v. Ashland-Warren, Inc., 458 So.2d 851 (Fla. 2d DCA 1984), rev. den., 464 So.2d 554 (Fla. 1985) (contract which provided that the subcontractor would indemnify the general contractor from all attorney's fees "incurred on account of any breach of ... any provision ... of this contract," was clear and unambiguous). In this regard, it is not the type of indemnity provision admonished by the Florida Supreme Court in Charles Poe Masonry or University Plaza.
B & H's second point on appeal is that TCC was not entitled to an award of attorney's fees because it was not the "prevailing party" in the arbitration. Rather, B & H claims that it prevailed because not only did it recover an affirmative judgment, but it also recovered a judgment greater than any offers of settlement made by TCC, despite the fact that TCC reduced the amount of B & H's net judgment by successful pursuit of some of its claims. TCC responds that the provision authorizing attorney's fees does not require that it prevail, but only that it prove that B & H breached the contract.
We agree with TCC. The attorney's fee provision in the construction contract does not require a "prevailing party" analysis. It simply and clearly requires a finding that B & H breached the contract in order for TCC to recover fees. The right to contractual attorney's fees is limited by the terms of the provision, Bowman v. Kingsland Dev., Inc., 432 So.2d 660 (Fla. 5th DCA 1983), and should be strictly construed. Keys Lobster. Therefore, we reject the application of a "prevailing party" analysis to the present case. Cf. Fixel Enterprises, Inc. v. Theis, 524 So.2d 1015 (Fla. 1988) (the Court refused to extend a statutory "prevailing party" analysis to a case involving a contractual attorney's fee provision containing the term "prevailing party" because the policy considerations of the statute were not implicated in the contract).
B & H's third point on appeal is that the trial court erred in failing to apply Fla.R.Civ.P. 1.442 to limit TCC's recovery of attorney's fees. We hold that the trial court did not err in finding that an unequivocal "offer of judgment" was never made, as contemplated by rule 1.442. B & H's alleged "offer of judgment" did not comply *388 with the specific requirements of the rule.[7] Specifically, it was not made by a "party defending against a claim." B & H made its settlement offer in May 1986, which was two months prior to its demand for arbitration and TCC's lawsuit. Therefore, it was not an offer of judgment. See Maguire v. Federal Crop Ins. Corp., 181 F.2d 320 (5th Cir.1950); Pena v. Hammond, 172 F.2d 312 (5th Cir.1949); Wright & Miller, Federal Practice and Procedure: Civil § 3003 (1973).[8] Additionally, the offer did not specify a definite amount nor did it specify that B & H was allowing TCC to take judgment against it. Finally, the offer of judgment rule does not apply to a case where judgment is entered against the plaintiff-offeree and in favor of the defendant-offeror. Delta Air Lines, Inc. v. August, 450 U.S. 346, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981) (interpreting the plain language of federal rule 68 which provides, in part, that "if the judgment finally obtained by the offeree is not more favorable than the offer the offeree must pay the costs ..."). In the instant case, the trial court rendered a net judgment in B & H's favor. Therefore, rule 1.442 was inapplicable.
In its fourth point on appeal, B & H argues that the trial court erred in failing to reduce the award of attorney's fees under the "results obtained" factor set forth in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). B & H contends that undisputed testimony showed that TCC's delays or refusal to approve changes due to unforeseen conditions related to the pool were the central issue in the case, and that the attorneys on both sides spent most of their time on the pool issues. B & H asserts that the trial court overlooked this evidence and incorrectly found that substantially all of the work performed by TCC's attorney was a result of B & H's breach of contract.
Under Rowe, the trial judge, in computing an attorney's fee award, should multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate for that particular type of litigation, and "when appropriate, adjust the fee on the basis of the contingent nature of the litigation or the failure to prevail on a claim or claims." 472 So.2d at 1151-52. When a party prevails on a claim but is unsuccessful on other unrelated claims, the court may consider the "results obtained" as an independent basis in reducing the fee. Id. at 1151. If the court does consider the "results obtained" it should indicate so in its order. Id.
In the instant case, the trial court determined that 700 hours was the time reasonably expended on the litigation and that a reasonable hourly rate was $87.50, resulting in a lodestar figure of $61,250.00. The court found that TCC's obligation to pay its attorneys was not contingent and that although TCC was successful on some of its claims and unsuccessful on others, the court was unable to separate the respective time spent on any of the claims due to the fact that the arbitration required the litigation of many issues. Additionally, expert witness Dunlap considered the results obtained and found that B & H obtained a negative result. The award of attorney's fees is a matter committed to sound judicial discretion, not to be disturbed on appeal, absent a showing of a clear abuse of discretion. Lucas v. Evans, 453 So.2d 141 (Fla. 1st DCA 1984); 3 Fla. Jur.2d Appellate Review section 339 (1979). We conclude that the trial court did not abuse its discretion in refusing to reduce the fee award. Under Rowe, a trial court may consider the "results obtained" in reducing an award if the "investigation and prosecution of the successful claims can be separated from the unsuccessful claims." 472 So.2d at 1151. Given the numerous *389 claims arbitrated and the complexity of determining the time expended respectively on TCC's successful and unsuccessful claims, the refusal to reduce the fee award was not an abuse of discretion.
In its final point on appeal, B & H argues that the trial court erred in awarding attorney's fees where the fees would not have been incurred had TCC mitigated damages by recognizing changed conditions under the contract. B & H contends that TCC could have entirely avoided the arbitration experience and subsequent attorney's fees by either agreeing to allow B & H to expend $15,000 to plaster the pool or by agreeing to B & H's settlement offer of $306,086. B & H's argument is fundamentally flawed. B & H incorrectly asserts that the determination of attorney's fees pursuant to a contract provision is an element of damages, therefore, subject to the principle of mitigation of damages. In Cheek v. McGowan Elec. Supply Co., 511 So.2d 977 (Fla. 1987), the Court rejected Florida district court holdings that contractually authorized attorney's fees are recoverable as part of damages. The Court stated that "recovery of attorney's fees is ancillary to the claim for damages... . because [a contractual provision] is only intended to make the successful party whole by reimbursing him for the expense of litigation." Id. at 979. We adhere to the holding in Cheek, and affirm the final judgment awarding contractual attorney's fees to TCC.

III.

TCC CROSS APPEAL
TCC's first point on cross appeal is that the trial court improperly restricted its award of attorney's fees to the period beginning with B & H's demand for arbitration through the date of the arbitration award. TCC contends that the arbitration panel found that the project was delinquent beginning on May 20, 1984, and that the testimony and affidavits of TCC's attorney, Robert McClure, clearly showed that legal preparation became timely and practical at that date, and that his fees toward investigation, negotiation and mediation prior to B & H's demand for arbitration amounted to $33,420.00. TCC additionally argues that the trial court should have awarded fees for the time expended subsequent to arbitration in litigating entitlement to an attorney's fees award, citing Bill Rivers Trailers, 489 So.2d 1139 (Fla. 1st DCA 1986). TCC concludes that its total request for fees in the amount of $130,664 was reasonable under the standards set forth by the Florida Supreme Court in Rowe.
In response, B & H argues that in the absence of an explicit statement that fees are recoverable in arbitration, a general indemnity provision allowing recovery of fees in a legal action does not authorize attorney's fees incurred as a result of an arbitration, citing Buena Vista Constr. Co. v. Carpenters Local Union 1765 of the United Bhd. of Carpenters & Joiners of Am., 472 So.2d 1356 (Fla. 5th DCA 1985). Additionally, B & H argues that it would be unreasonable to award attorney's fees incurred prior to arbitration or subsequent to arbitration. Id.
In its reply brief, TCC argues that B & H raises for the first time in this appeal the issue of whether an arbitration is a "legal action." TCC contends that it prevailed on this issue when it was raised before the trial court, citing Consol. Labor Union v. Clark, 498 So.2d 547 (Fla. 3d DCA 1986) (arbitration is an "action" within the meaning of the attorney's fee provision of ERISA, 29 U.S.C. § 1132(g)(1) (1982)). TCC concludes that if this court were to adopt B & H's interpretation of "legal action", such a holding would conflict with Clark and render the attorney's fee provision meaningless in light of the provision authorizing arbitration in the contract.
TCC correctly asserts that B & H raises for the first time the issue regarding whether an arbitration proceeding is a legal action within the meaning of the attorney's fee provision of the contract. The Florida Arbitration Code does not preclude the recovery of attorney's fees related to the arbitration proceeding, Zac Smith & Co., Inc. and Lumbermens Mutual Casualty Co. v. Moonspinner Condominium *390 Ass'n Inc., 534 So.2d 739 (Fla. 1st DCA 1988), but recovery must be authorized by statute or contract. Codomo v. Emanuel, 91 So.2d 653 (Fla. 1956); Buena Vista, 472 So.2d at 1358; Beach Resorts Int'l, Inc. v. Clarmac Marine Constr. Co., 339 So.2d 689 (Fla. 2d DCA 1976). In the instant case, the trial court awarded fees based on the fact that TCC had to take legal action to resolve B & H's breach of the contract and because both parties requested arbitration. Reading the attorney's fee provision and the arbitration provision, in paria materia, we agree with TCC that the term "legal action" as used in the attorney's fee clause encompasses arbitration. See Consol. Labor Union v. Clark.
We hold that the trial court properly denied TCC's request for attorney's fees incurred prior to B & H's demand for arbitration. The attorney's fee provision limits recovery to fees incurred as a result of legal action. The terms of this provision control and should be strictly construed. Bowman, 432 So.2d at 664. Because the contract does not authorize the recovery of fees incurred prior to any legal action taken, those fees are not recoverable.
However, we conclude that the trial court erred in excluding recovery of attorney's fees expended for services rendered after the date of the arbitration award. The Florida Arbitration Code, section 682.14, allows for the award of costs incurred to confirm, modify or correct an arbitration award. It is proper to award attorney's fees for the time expended to litigate entitlement to attorney's fees subsequent to an arbitration proceeding. Bill Rivers Trailers, 489 So.2d at 1143; B & L Motors, Inc. v. Bignotti, 427 So.2d 1070 (Fla. 2d DCA 1983) (overruled on other grounds, Travieso v. Travieso, 474 So.2d 1184 (Fla. 1985)); Crittenden Orange Blossom Fruit v. Stone, 514 So.2d 351 (Fla. 1987) (however, in worker's compensation cases this holding does not extend to establishing the amount of the award).
In Bill Rivers Trailers, this court affirmed the trial court's award of attorney's fees for the time spent subsequent to arbitration to litigate entitlement to an attorney's fee because the prevailing party's fee agreement with his attorney contemplated payment for work involved in securing payment of statutory attorney's fees, and the entitlement did not vest until the arbitration award was entered. In B & L Motors, the court was unable to determine whether the prevailing party had an interest in the fee award and whether he owed his attorneys for the services rendered to secure the statutory fee award; therefore, the court remanded for such a determination, holding that if the fee award was in the clients interest and if the fee agreement contemplated payment for that work, then additional fees would be proper. 427 So.2d at 1074.
In the instant case, attorney's fees were recoverable under the contract to the benefit of TCC for services rendered in legal actions to resolve breaches of the contract. It would appear that the fee agreement between TCC and its attorney contemplated the work subsequent to the arbitration award in litigating entitlement to an attorney's fee award. However, the fee agreement was not made part of the record. Therefore, we remand for such a determination consistent with Bill Rivers Trailers and B & L Motors.
TCC's second point on cross appeal is that the arbitration panel inadvertently and mistakenly used B & H's second amended claim for direct job costs in the amount of $151,390.40 and should have used B & H's final amended claim for the direct job costs in the amount of $141,437.72, thus creating an error in the arbitration award in the amount of $9,952.68. B & H apparently submitted three separate "summary of claims" to the arbitration panel. It is clear from paragraph 14 of the arbitration award that the panel used the figures from the second set of claims. The umpire, in the post-award order, found that there was no basis for modification or correction of the award, and that the panel arrived at the award amount through "fair consideration of the multitude and variety of claims and rebuttals advanced by the parties and sifted down by the arbitrators to areas of major dispute and resolving these by compromise." *391 The trial court did not address this issue in its order confirming the award.
Every reasonable presumption will be indulged to uphold an arbitration proceeding which has resulted in an award. Fenster v. Makovsky, 67 So.2d 427 (Fla. 1953); Beach Resorts. Under section 682.14(1)(a), Fla. Stat. (1987), the trial court must modify or correct an award when "there is an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award." It is apparent from the record that the panel considered all the claims made by each party. Given the umpire's resolution of this issue, we conclude that there was not an evident miscalculation of figures warranting modification or correction of the award.
TCC's third point on cross appeal is that the trial court should have awarded the additional fees and costs for services rendered by TCC's architect at the arbitration proceeding, pursuant to the contract and section 92.231, Florida Statutes (1987).[9] TCC contends that these services were separate and distinct from the original architect's fees of $64,941.55 assessed against B & H in the arbitration award. B & H responds that under section 682.11 of the Florida Arbitration Code, the arbitration panel had the authority to consider costs in making its award, and it would be improper for this court to address that or any other issue which could have been decided by the arbitration panel, citing McDaniel v. Berhalter, 405 So.2d 1027 (Fla. 4th DCA 1981).
Under section 682.11, an arbitration panel is authorized to award all fees and costs, except attorney's fees. Zac Smith & Co., 534 So.2d at 742; Loxahatchee River Envtl. Control Dist. v. Guy Villa & Sons, Inc., 371 So.2d 111 (Fla. 4th DCA 1978), cert. den., 378 So.2d 346 (Fla. 1979). The panel could have awarded costs but expressly chose not to do so because both parties had made substantial claims and demands which were not sustained, thus the "fairest disposition" was to have each party bear its own costs. It would have been improper for the trial court to add costs of the arbitration to the order confirming the award. McDaniel, 405 So.2d at 1030-31; Zac Smith & Co., 534 So.2d at 741. Therefore, we affirm the order directing both parties to bear their own costs of the arbitration.
TCC's final argument on cross appeal is that the trial court should have awarded the fees of TCC's expert Dunlap who testified as to the amount of a reasonable attorney's fee, citing Travieso v. Travieso, 474 So.2d 1184 (Fla. 1985), Straus v. Morton F. Plant Hosp. Found., Inc., 478 So.2d 472 (Fla. 2d DCA 1985), and section 92.321. B & H responds that pursuant to section 92.231, the trial court did not abuse discretion. Travieso, 474 So.2d at 1186; Tuerk v. Allstate Ins., 498 So.2d 504 (Fla. 3d DCA 1986), rev. den., 506 So.2d 1040 (Fla. 1987) (disapproved on other grounds, Miami Children's Hosp. v. Tamayo, 529 So.2d 667 (Fla. 1988)).
In Travieso, the Court held that the broad language of § 92.231 encompassed taxing costs for the services of an attorney who testifies as an expert on the subject of attorney's fees; however, such an award of costs is within the discretion of the trial court. 474 So.2d at 1185-86. The Court stated, in dicta, that an attorney who testifies on the reasonableness of fees should do so gratuitously as a matter of professional courtesy and should expect compensation "only in the exceptional case where the time required for preparation and testifying is burdensome." Id. In Tuerk, the 3d DCA held that a trial court should not summarily deny a claim for expert witness fees until the standards of Travieso and § 92.231 are satisfied. 498 So.2d at 505. In Straus, the 2d DCA construed Travieso to mean that an award of costs for an attorney who testifies as to the reasonableness of fees is discretionary only where the *392 attorney does not expect to be compensated for his testimony. 478 So.2d at 473.
We do not construe Travieso as the Second District Court of Appeal did in Straus. Under Travieso, the issue of taxing costs for the fee of an attorney who testifies as an expert as to the reasonableness of attorney's fees, is discretionary, and a trial court should consider Travieso in exercising this authority. In the present case, the final judgment is unclear as to whether the trial court denied the costs as a matter of law (which would have been error) or whether the court exercised its discretion in accordance with Travieso. Therefore, we remand for clarification of the final judgment.

IV.
In summary, we AFFIRM the final judgment awarding contractual attorney's fees to appellee TCC. On the cross appeal, we REVERSE and REMAND for a determination of reasonable fees incurred by cross appellant TCC for services rendered subsequent to arbitration. We also REVERSE and REMAND for clarification of the trial court's order denying costs for the services of TCC's expert attorney who testified as to the fee award.
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] In an evidentiary hearing, Hinson testified that the contract deductions left an unpaid balance on the contract of approximately $11,000. The Board accepted Hinson's recommendation.
[2] Subcontractors Birdair Structures, Inc. and Joseph Francis filed demands for arbitration against B & H in October and December of 1985, respectively.
[3] The parties sought modification or correction of the award, pursuant to sections 682.10 and 682.14(1)(a), (c), Florida Statutes (1987), which authorize an arbitration panel to change an award based upon "an evident miscalculation of figures" or if "[t]he award is imperfect as a matter of form, not affecting the merits of the controversy."
[4] B & H's attorney, L. Charles Hilton, testified that the only written offers to settle were TCC's April, 1986 offer for $11,000 and B & H's May, 1986 offer for $306,000.
[5] McClure testified that two days before the arbitration, he had offered to settle for $201,000, which B & H rejected, but that B & H then had counter-offered for $600,000.
[6] In University Plaza, a tenant agreed to indemnify the landlord "from and against any and all claims for any personal injury or loss of life in and about the demised premises." The Court held that such language does not authorize in clear and unequivocal terms indemnification for neglgence committed by the landlord alone. 272 So.2d at 512. In Charles Poe Masonry, the contract between a lessee (of a scaffold) and the lessor provided that lessee would hold the lessor harmless from all claims arising out of the erection, maintenance, use or possession of the scaffold. The Court held that the lessee undertook to hold the lessor harmless from any vicarios liability, but not to indemnify the lessor for the lessor's affirmative misconduct, citing University Plaza. 374 So.2d at 489-90.
[7] Rule 1.442 provides, in pertinent part, that: "At any time more than ten days before the trial begins a party defending against a claim may serve an offer on the adverse party to allow judgment to be taken against him for the money or property or to the effect specified in his offer with costs then accrued... . If the judgment finally obtained by the adverse party is not more favorable than the offer, he must pay the costs incurred after the making of the offer."
[8] Rule 1.442 is modelled after and is virtually identical to Federal Rule 68. See Committee Notes to rule 1.442.
[9] Section 92.231(2), provides that "[a]ny expert or skilled witness who shall have testified in any cause shall be allowed a witness fee including the cost of any exhibits used by such witness in the amount of $10 per hour or such amount as the trial judge may deem reasonable, and the same shall be taxed as costs."