Argued and submitted September 19, 1989, resubmitted In Banc March 7, reversed and remanded April 18, reconsideration denied July 18, petition for review denied August 14, 1990 (310 Or 243)

# MONTGOMERY ELEVATOR COMPANY,
*Appellant,*

*v.*

# TUALITY COMMUNITY HOSPITAL, INC.,
*Respondent.*

## (C880697 CV; CA A50882)

790 P2d 1148

Thomas M. Christ, Portland, argued the cause for appellant. With him on the briefs was Mitchell, Lang & Smith, Portland.

Lindsey H. Hughes, Portland, argued the cause for

respondent. With her on the brief were Molly K. Marcum and Hallmark, Keating & Abbott, Portland.

**RIGGS, J.**

In this action for breach of contract, plaintiff appeals a summary judgment for defendant. The issue is whether the exclusive liability provision of the Workers' Compensation Act, ORS 656.018(1), voids an agreement to purchase liability insurance.[1] We conclude that it does not.

Plaintiff contracted with defendant to maintain and repair elevator equipment on defendant's premises. In exchange, defendant agreed to procure comprehensive liability insurance protecting plaintiff from personal injury and property damage claims from all persons, including defendant's employees.[2] Defendant failed to purchase the insurance.

One of defendant's employees, injured while using the elevator, sued plaintiff, who settled the claim for $65,000 and incurred $11,470 in defense costs. Plaintiff then demanded that defendant reimburse it. When defendant refused, plaintiff brought this action for breach of contract. On cross-motions for summary judgment, the trial court granted defendant's.

Defendant argues both that the exclusivity of ORS 656.018(1) is comprehensive, and thus precludes any other "liability," and that agreements to purchase insurance are identical to indemnity agreements,[3] which are expressly pro-

---

[1] ORS 656.018(1) provides, in pertinent part:

"(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) [to provide workers' compensation insurance for subject workers] is exclusive and in place of all other liability arising out of compensable injuries to the subject workers * * * specifically including claims for * * * indemnity asserted by third persons from whom damages are sought on account of such injuries * * *.

"* * * * *

"(c) * * * [A]ll agreements or warranties contrary to the provisions of paragraph (a) of this subsection entered into after July 19, 1977, are void."

[2] In a separate provision, the maintenance agreement also included an indemnity clause that required that defendant "indemnify, protect and save harmless Montgomery Elevator Company and its affiliates from and against liabilities, losses and claims * * *." Plaintiff concedes that the indemnity agreement is void insofar as plaintiff's obligations might arise out of compensable injuries to defendant's employees.

[3] If the agreements are identical and duplicative, defendant does not explain why Montgomery Elevator would, when negotiating the maintenance contract, "knowingly ask for something which would be of no value to [it]." *Waterway Terminals Co. v. P.S. Lord Mechanical Contractors,* 242 Or 1, 22, 406 P2d 556, 566 (1965).

hibited by the statute. Consequently, defendant asserts that agreements to purchase insurance are also barred.

Plaintiff counters that agreements to purchase insurance are independent contractual obligations that are not subject to the exclusive liability provision. Plaintiff also argues that agreements to purchase insurance are distinguishable from indemnity agreements and, because insurance agreements are not specifically proscribed by the statute, defendant is liable for damages resulting from its breach of a valid, enforceable contract. We agree with plaintiff.

As a preliminary issue, we address defendant's contentions that we have already decided that insurance and indemnity agreements are one and the same in *Sears, Roebuck & Co. v. Montgomery Elevator,* 63 Or App 769, 772, 665 P2d 1265, 1266-67, *rev den* 295 Or 730 (1983). Defendant misconstrues *Sears.* Interpreting nearly identical contract provisions,[4] we merely stated that "[a] provision in an indemnity agreement that requires the indemnitor to carry liability insurance is *evidence* of the intent of the parties as to the scope of the indemnity obligation."[5] 63 Or App at 772. (Emphasis supplied.) In other words, we implicitly recognized that the two types of agreements are different, but we expressly left the question open.[6]

■     We turn now to the parties' primary arguments. Under the plain language of ORS 656.018(1), a complying employer's liability is exclusive only for claims "arising out of compensable injuries." The genesis of plaintiff's claim lies in

---

[4] Both maintenance contracts provided that the hospital and Sears would "maintain comprehensive bodily injury and property damage insurance (naming Montgomery Elevator Company as an additional insured), including bodily injury and property damage caused by the ownership, use or operation of the equipment," as well as a parallel indemnity provision.

[5] For example, a particular claim could be outside the agreed scope of liability, because it was greater than the policy limits or, possibly, because it was not covered by the terms of the policy for other reasons.

[6] We noted:

"Evidently [Sears] failed to carry such insurance. [Montgomery Elevator] argues that, because this breach of contract by itself directly resulted in defendant's having to defend the original lawsuit and ultimately to pay the settlement sum, [Sears] is now liable to [Montgomery Elevator] for the amounts so expended. Because we dispose of the case on other grounds, we need not address this contention." 63 Or App at 772 n 3.

defendant's failure to keep its part of a bargain by purchasing insurance, not in the infortuitous occurrence of an injury to defendant's employee. The parties' contract was intended to protect the non-employer from liability for tort claims rather than to relieve the employer from its responsibility to provide workers' compensation coverage.

Had plaintiff known before anyone was injured that defendant had not purchased the insurance as it agreed, plaintiff could have sued for specific performance or purchased the insurance itself and then sued defendant for the cost of the policy. Plaintiff's claim against defendant does not fall under the statutory proscription, because it does not "arise out of compensable injuries" but, rather, arises out of a breach of contract.

Defendant's other argument, that indemnity agreements and agreements to procure insurance are identical, is also incorrect. Although there is no Oregon authority for the distinction, plaintiff cites several persuasive decisions in which other jurisdictions have concluded that the two types of agreements are significantly different. *See, e.g., Zettel v. Paschen Contractors, Inc.,* 100 Ill App 3d 614, 427 NE2d 189 (1981); *Pickhover v. Smith's Management Corp.,* 771 P2d 664 (Utah 1989). In *Zettel,* the court stated:

> "[A] promise to obtain insurance is not the same as a promise to indemnify. * * *. Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries and damages. Under an agreement to obtain insurance, the promisor merely agrees to procure the insurance and pay the premium on it. Once the insurance is obtained, the promisor bears no responsibility in the event of injury or damage even if the insurer should breach the insurance agreement through no fault of the promisor." 100 Ill App 3d at 618. (Citations omitted.)

The Utah Court of Appeals noted in *Pickhover:*

> "An agreement to provide insurance merely allocates an economic burden on one party to make a payment to protect another after the parties have ultimately decided 'to shift the risk of loss * * * upon an insurer.' * * * An agreement to purchase insurance does not make the party agreeing to provide the insurance an indemnitor. Rather, an agreement to insure is an agreement to provide both parties with the benefits of insurance." 771 P2d at 669. (Citations omitted.)

Defendant's contention that plaintiff is actually seeking indemnity ignores a critical distinction between the two contracts: under an indemnity contract, payment by the insured is a prerequisite to the insurer's duty of reimbursement; under an insurance contact, the insurer's obligation attaches as soon as liability is established. Payment by the insured is immaterial.[7]

Although, under the facts, damages that plaintiff seeks happen to be the same as if there had been an indemnity agreement, the coincidence of the measure of damages does not mean that the contract to provide insurance is the equivalent of an indemnity agreement. It is only because an injury intervened between defendant's breach of contract and plaintiff's awareness of that fact that the amount plaintiff seeks is equivalent to the settlement and the defense costs. If, instead, defendant had abided by its agreement and purchased the liability policy for which plaintiff had bargained, then the insurer would have been responsible for any claim that occurred.

Reversed and remanded.

**GRABER, J.,** dissenting.

The foundation of the workers' compensation system is a legislatively-imposed bargain: Employers are liable without fault for all work-related injuries to their employees; in

---

[7] As one treatise explains:

"Under a liability policy the insurer is required to make payment although the insured has not yet suffered any loss, for by definition the purpose of the liability policy is to shield the insured from being required to make any payment on the claim for which he is liable.

"Under an indemnity contract, by way of contrast, the insurer is only required to indemnify or make whole the insured after he has sustained actual loss, meaning after the insured has paid or been compelled to make a payment, his action against the insurer then being to recover the amount of such loss by way of indemnity." 11 *Couch on Insurance,* 44:4, 187-88, (R. Andersen 2d ed. 1963).

The confusion stems from the fact that plaintiff did sustain an actual loss for which it seeks reimbursement. As a direct consequence of defendant's breach, plaintiff bore the financial burden of discharging the settlement and defense costs of the injury claim. However, unlike under an indemnity agreement, that payment was not a prerequisite to the insurer's obligation under an insurance agreement.

return, complying employers are insulated from *all* other liability for those injuries. ORS 656.017; ORS 656.018.[1] The majority creates a loophole that eviscerates the bargain. I therefore dissent.

Defendant is a complying employer. It agreed to purchase and "maintain comprehensive bodily injury and property damage insurance (naming [plaintiff] as an additional insured), including bodily injury and property damage caused by the ownership, use or operation of" defendant's elevators. As applied to the claim of a non-employee, the agreement is unexceptional, and defendant should be liable for any damages that result from its failure to carry out its promise. As applied to the claim of one of defendant's employees who is injured while working, however, the agreement would make defendant liable for a compensable injury beyond its liability for workers' compensation benefits. Accordingly, to that extent the agreement is "void" under ORS 656.018(1)(c).

Partly because of the way that the parties argued the case, much of the majority's opinion deals with tangential issues. The question is not whether an agreement to provide insurance is identical to an indemnity agreement or how to measure the damages if defendant's failure to purchase insurance results in damage to plaintiff. The question is whether the agreement, as it applies in this case, subjects defendant to financial responsibility for an injury to its employee beyond its responsibility for his compensation benefits. If it does, it is void to that extent.

Defendant agreed to buy insurance to protect plaintiff from liability to third parties. If the policy had excluded employee claims, the insurer's risk would have been lower and so, presumably, would have been the premium that defendant

---

[1] ORS 656.018(1) provides, in pertinent part:

"(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries, except as specifically provided otherwise in ORS 656.001 to 656.794.

"* * * * *

"(c) * * * [A]ll agreements or warranties contrary to the provisions of paragraph (a) of this subsection entered into after July 19, 1977, are void."

would have paid. Thus, because the agreement required that the insurance cover employees injured while working, part of defendant's cost of complying with the contract would have been attributable to the risk of on-the-job employee injuries. Defendant, however, already had workers' compensation coverage. The agreement with plaintiff effectively would have imposed an extra cost for compensable injuries. Yet defendant's compliance with ORS 656.017 is supposed to be "exclusive and in place of all other liability arising out of compensable injuries to the subject workers[.]" ORS 656.018(1)(a).

In short, defendant's agreement with plaintiff imposed a liability on defendant that the law did not permit it to accept. The fact that the agreement that plaintiff seeks to enforce is one to procure insurance rather than to indemnify is irrelevant. Defendant's liability for its employees' compensable injuries is limited to the cost of complying with ORS 656.017, and no agreement may increase that liability by even a penny or a peppercorn. It does not matter whether the increase is the cost of buying insurance for a third party, damages for failing to purchase that insurance, or any other kind. That is how the legislature has chosen to protect the bargain that is at the heart of the compensation system. The majority fails to enforce the legislature's decision and thereby undercuts the entire system.

I dissent.

Joseph, C. J., and Newman and Edmonds, JJ., join in this dissent.