James HURLBURT, Plaintiff,

St. Paul Companies, Intervenor,

v.

NORTHERN STATES POWER COMPANY, et al., Defendants,

and

KRAUS–ANDERSON INCORPORATED, Third-Party Plaintiff, Respondent,

v.

IMPERIAL DEVELOPERS, INC., Third-Party Defendant, Appellant.

No. CO–94–1515.

Court of Appeals of Minnesota.

Dec. 13, 1994.

Review Granted Feb. 14, 1995.

Daniel J. Maertens, Dean R. Karau, Fredrikson & Byron, P.A., Minneapolis, for respondent.

John M. Anderson, Charles E. Lundberg, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SHORT and MULALLY,* JJ.

## OPINION

SHORT, Judge.

This personal injury case raises issues of insurance coverage. On appeal from a judgment that the subcontractor must provide the contractor with the benefits of insurance it had obtained, the subcontractor argues the trial court erred in: (1) interpreting the parties' agreement; (2) allowing the contractor to recover fees incurred prior to a tender of defense; and (3) finding the fees incurred by the contractor were reasonable.

## FACTS

James Hurlburt, a heavy equipment operator, was injured on his job at a construction site. Hurlburt's employer, Imperial Developers, Inc. ("subcontractor") had been hired by Kraus–Anderson Construction Company ("contractor") as the excavation/grading subcontractor. Hurlburt commenced a personal injury action against the contractor and Northern States Power Company. The contractor filed a third-party complaint against the subcontractor claiming the subcontractor would be contractually obliged to pay all sums owed by the contractor. The contractor then moved for partial summary judgment against the subcontractor. The trial court granted the contractor's motion and ordered the subcontractor to provide the contractor with the benefits of the insurance it had procured.

After a four-week trial, the jury found the contractor 85 percent negligent and Hurlburt 15 percent negligent. The jury assessed damages in excess of one million dollars. The trial court denied the subcontractor's motion for reconsideration of its earlier order for partial summary judgment, denied the contractor's post-trial motions, and awarded $257,255.25 to the contractor as fees and costs incurred in enforcing the parties' contract.

## ISSUES

I. May a subcontractor contract to procure insurance for a contractor's negligence?

II. Must a contractor tender defense to the subcontractor before it may receive insurance benefits?

III. Did the trial court abuse its discretion in finding that the attorney fees incurred by the contractor were reasonable?

## ANALYSIS

On appeal from a grant of summary judgment, we determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. Minn.R.Civ.P. 56.03; *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). We must view the evidence in the light most favorable to the nonmoving party, but we need not defer to the trial court's application of the law. *Offerdahl*, 426 N.W.2d at 427; *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

■ There are no issues of material fact in dispute for purposes of summary judgment. All parties agree the sole issue on appeal involves an interpretation of the subcontract agreement. Construction of a contract is a question of law for the court. *Hunt v. IBM Mid America Employees Fed. Credit Union,* 384 N.W.2d 853, 856 (Minn. 1986); *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979). By contrast, the reasonable value of attorney fees is a question of fact and we must uphold the trial court's findings on that issue unless they are clearly erroneous. *Amerman v. Lakeland Dev. Corp.,* 295 Minn. 536, 537, 203 N.W.2d 400, 400–01 (1973); *Ryan v. Bigos Properties,* 351 N.W.2d 680, 681 (Minn.App.1984).

### I.

Paragraph 7 of the subcontract agreement provides:

The Subcontractor agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontract or occurring or resulting from the use by the Subcontractor, his agents or employees, of materials, equipment, instrumentalities or other property, whether the same be owned by the Contractor, the Subcontractor or third parties, and the Subcontractor, to the fullest extent permitted by law, agrees to indemnify and save harmless the Contractor, his agents and employees from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph and the Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage and endorsements as will insure the provisions of this paragraph.

Paragraph 7 is a risk-shifting mechanism often used in the construction industry, requiring the subcontractor to provide insurance benefits to the contractor even for claims based on the contractor's own negligence. *See Holmes v. Watson–Forsberg Co.,* 488 N.W.2d 473, 475 (Minn.1992) (explaining industry practice of shifting risk). The subcontractor, however, argues that Attachment B to the contract modifies its insurance obligation. Attachment B states:

Notwithstanding the provisions of Paragraph 7 of this Subcontract Agreement, the indemnity set forth therein shall apply only to the extent that the underlying injury or damage attributable to the negligence or otherwise wrongful act or omission, including breach of a specific contractual duty, of Subcontractor. * * * Subcontractor further agrees to indemnify, defend and save harmless Contractor * * * from and against all claims arising within the scope of the types and limits of insurance Subcontractor has agreed to obtain * * * pursuant to this Subcontract Agreement (a) to the same extent as said insurance if Subcontractor fails to obtain and keep in force said insurance and (b) to the full extent of the deductible amount of self-insured retention of said insurance.

■ The subcontractor argues Attachment B limits the insurance obligation to damages attributable to its own negligence. But there is a difference between indemnification agreements and agreements to procure insurance in the building and construction industry. *Compare* Minn.Stat. § 337.02 (1992) (indemnification agreements unenforceable except to the extent damage is attributable to negligent act of promisor) *with* Minn.Stat. § 337.05, subd. 1 (1992) (chapter 337 does not affect the validity of agreements to provide insurance). Limitations on an indemnification obligation do not prevent the parties from agreeing that one party is to obtain insurance to cover harm beyond that attributable to its own negligence. *Holmes,* 488 N.W.2d at 475; *Independent Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.,* 266 Minn. 426, 437, 123 N.W.2d 793, 800 (1963).

■ The subcontractor paid a premium and obtained the coverage contemplated in Paragraph 7 of the subcontract agreement. Because the subcontractor agreed to provide insurance benefits to the contractor, the con-

tractor was entitled to judgment as a matter of law.

## II.

■ As a general rule, a tender of defense is a condition precedent to obtaining indemnification for attorney fees. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 252 N.W.2d 107, 121 (1977). The subcontractor argues the trial court erred in awarding attorney fees despite the contractor's late tender of defense. This case, however, does not involve a contract to indemnify. An agreement to procure insurance is significantly different from an agreement to indemnify. *See Holmes*, 488 N.W.2d at 475 (party to a construction contract may agree to procure insurance for harm not attributable to its own negligence, even though party cannot agree to indemnify for harm not attributable to its own negligence); *see also Jokich v. Union Oil Co. of Cal.*, 214 Ill.App.3d 906, 158 Ill.Dec. 420, 423, 574 N.E.2d 214, 217 (1991) (agreement in construction contract to obtain insurance is neither an agreement to indemnify nor a contract of insurance); *Roblee v. Corning Community College*, 134 A.D.2d 803, 521 N.Y.S.2d 861, 863 (1987) (contract to provide insurance coverage is clearly distinct from and treated differently than agreement to indemnify), *appeal denied*, 72 N.Y.2d 803, 532 N.Y.S.2d 369, 528 N.E.2d 521 (1988); *Montgomery Elevator Co. v. Tuality Community Hosp., Inc.*, 101 Or.App. 299, 790 P.2d 1148, 1150 (1990) (contract to provide insurance is not equivalent to indemnity agreement), *pet. for rev. denied*, 310 Or. 243, 796 P.2d 360 (1990).

■■ The purpose of the rule requiring a tender of defense in indemnity cases is to provide the party from whom indemnity is sought the opportunity to handle its own defense. *Hill*, 252 N.W.2d at 121. In cases involving an agreement to procure insurance, by contrast, the promisor does not defend itself but merely is contractually obliged to procure insurance. *See Montgomery Elevator Co.*, 790 P.2d at 1150 (once insurance is obtained, promisor bears no responsibility in the event of injury or damage). Neither case law nor the subcontract agreement require the contractor to tender defense before receiving the insurance benefits required by Paragraph 7 of the subcontract agreement. Under these circumstances, the trial court properly awarded attorney fees without regard to the contractor's tender of defense.

## III.

■ The reasonable value of attorney fees is a question of fact and we must uphold a trial court's findings regarding the value of such fees unless they are clearly erroneous. *Amerman*, 295 Minn. at 537, 203 N.W.2d at 400–01. The subcontractor argues the trial court erred in finding the attorney fees incurred by the contractor were reasonable. We disagree. The trial court found: (1) the case was extremely complicated and reasonably took four weeks to litigate; and (2) the general contractor was the targeted defendant and its defense team approach was necessary. After a careful review of the evidence, we cannot say the trial court erred in finding the contractor's attorney fees were reasonable.

## DECISION

Under the subcontract agreement, the contractor is entitled to the benefits of the insurance procured by the subcontractor. Because the subcontractor agreed to procure insurance rather than to indemnify the contractor, the trial court properly awarded attorney fees without regard to the contractor's tender of defense. In addition, the trial court's finding that the fees incurred by the contractor were reasonable is not clearly erroneous.

**Affirmed.**