Argued and submitted May 28, affirmed September 10, 2003

# WALSH CONSTRUCTION CO.,
*Appellant,*

*v.*

# MUTUAL OF ENUMCLAW,
*Respondent.*

## 0104-03398; A117368

76 P3d 164

James C. Chaney argued the cause for appellant. With him on the briefs were Patrick A. Lynd and Jaqua & Wheatley, P.C.

Thomas M. Christ argued the cause for respondent. With him on the brief was Cosgrave Vergeer Kester LLP.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Plaintiff Walsh Construction Company (WCC) appeals from a judgment for defendant Mutual of Enumclaw on plaintiff's claim for breach of an insurance contract. As described below, we conclude that, because of the operation of ORS 30.140(1), defendant had no duty either to defend or to indemnify plaintiff. Accordingly, we affirm.

The material facts are not in dispute. Plaintiff, a general contractor, entered into an agreement with a subcontractor, Ron Rust Drywall, Inc. (Rust), to work on a remodeling job. The subcontract agreement between plaintiff and Rust obligated Rust to procure liability insurance coverage naming plaintiff and its agents as additional insureds. The pertinent provision stated, in part:

"**Insurance.** Subcontractor shall obtain, pay for, and maintain such insurance as is required under this paragraph. Prior to commencing performance of the Work, Subcontractor shall provide to WCC a certificate of insurance evidencing such required insurance. Such certificate shall name Owner, WCC, and the officers, directors, partners, employees, and agents of each of them as additional insureds, and shall provide that the insurance will not be canceled, reduced, or altered without thirty (30) days' written notice to WCC. In the event Subcontractor fails to maintain the insurance as required, WCC in its sole discretion may purchase such insurance at the expense of Subcontractor. The required insurance shall at least include those types of coverage and minimum policy limits required to be maintained by WCC under the Prime Contract."

(Underscoring in original.)

The subcontract further prescribed minimum coverage limits for various required types of insurance, *e.g.*, $2 million per occurrence for "commercial general coverage," and provided that the general liability insurance "shall be primary and non-contributory with [plaintiff's] policy." Rust procured the requisite liability insurance from defendant, paying a premium for a "blanket additional insured endorsement" that added as insureds "any person or organization (called additional insured) whom you are required to add as

an additional insured on this policy under a written contract or agreement."

Several months later, one of Rust's employees, McComas, was injured on the work site. McComas made a demand on plaintiff, claiming damages of over $500,000. Plaintiff tendered defense of McComas's claim to defendant, based on the "additional insured" endorsement to Rust's policy described above. Defendant refused to defend on the ground that the provision of plaintiff's subcontract with Rust requiring Rust to obtain insurance coverage for plaintiff violated ORS 30.140(1).[1] Plaintiff settled with McComas for $100,000 and then initiated this action for breach of contract, premised on its status as an "additional insured" under Rust's policy.

Plaintiff pleaded claims for breach of defendant's duty to defend the McComas claim and for breach of defendant's duty to indemnify plaintiff for the amount that it paid to settle that claim, as well as plaintiff's settlement-related costs. Both parties moved for summary judgment. Defendant contended that the subcontract provision that required Rust to add plaintiff as an additional insured was void under ORS 30.140(1) and, thus, that plaintiff was not a legally cognizable "additional insured" under the endorsement that defendant had issued to Rust. Consequently, defendant asserted, it had no duty either to defend or to indemnify plaintiff.[2]

Plaintiff responded that an agreement to procure insurance is not an "agreement that requires a person * * * or

---

[1] ORS 30.140(1) provides, in part, that, subject to certain exceptions:

"[A]ny provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damages arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void."

[2] Defendant also made other, alternative arguments in support of summary judgment, including (1) defendant did not have a duty to defend the McComas claim because, under the insurance policy, it had a duty to defend only "suits," defined as civil proceedings or arbitration proceedings, but plaintiff had settled with McComas before a "suit" was filed; and (2) defendant did not have a duty to indemnify because plaintiff settled the claim at issue here without defendant's agreement but, under the policy, defendant was obligated to indemnify amounts paid in settlement only if it had consented to the settlement. The trial court did not reach and resolve those alternative arguments.

that person's * * * insurer to indemnify another against liability." ORS 30.140(1). As primary support for that proposition, plaintiff invoked *Montgomery Elevator Co. v. Tuality Community Hosp.*, 101 Or App 299, 790 P2d 1148, *rev den*, 310 Or 243 (1990).

The trial court agreed with defendant that the subcontract's insurance procurement provision was void under ORS 30.140(1), precluding plaintiff from enforcing any rights as an additional insured under the policy. Consequently, the court granted defendant's motion for summary judgment.

On appeal, the parties reiterate their arguments before the trial court, including defendant's alternative arguments, *see* 189 Or App at 403 n 2, and plaintiff's responses. Plaintiff contends that there is a fundamental, and ultimately dispositive, difference between an agreement to indemnify another party for the consequences of its own negligence and an agreement to procure insurance coverage by which the other party will be indemnified for its own liability. Plaintiff asserts that ORS 30.140(1) voids the former, but not the latter. As support for its major premise, plaintiff relies on the following observation from *Montgomery Elevator Co.*:

> " '[A] promise to obtain insurance is not the same as a promise to indemnify. * * * Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries and damages. Under an agreement to obtain insurance, the promisor merely agrees to procure the insurance and pay the premium on it.' "

101 Or App at 303 (quoting *Zeitel v. Paschen Contractors, Inc.*, 100 Ill App 3d 614, 618, 427 NE 2d 189 (1981)). Thus, plaintiff posits that, because the subcontract provision here merely required Rust to procure and maintain coverage naming plaintiff as an additional insured and did not purport to allocate to Rust the entire burden of plaintiff's liability for damages in excess of Rust's insurance coverage, that provision was not "an agreement * * * to indemnify" within the meaning of ORS 30.140(1).

Defendant counters by emphasizing that ORS 30.140(1) explicitly prohibits provisions in construction agreements that require "a person *or that person's * * * insurer* to indemnify another." Defendant reasons that that

language can refer only to insurance procurement provisions—that is, that, because the insurer is not a party to a construction agreement, the only plausible reference for the statutory prohibition is to "additional insured" arrangements that, in practical effect, require one party's insurer to indemnify the other party for the other party's liability. Defendant further emphasizes that there was no equivalent to that language in the statute that we construed in *Montgomery Elevator Co.* Given that difference in language, defendant asserts that, whatever the correctness of *Montgomery Elevator Co.*'s generic distinction between "a promise to obtain insurance" and "a promise to indemnify" as applied in that context, it cannot be dispositive of the correct construction of ORS 30.140.

We agree with defendant that *Montgomery Elevator Co.* is, ultimately, inapposite. That case involved an entirely different statutory scheme, with materially different statutory language.[3] Rather, in construing ORS 30.140, we must begin at the beginning—with that statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

ORS 30.140 provides, in part:

"(1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damages arising out of death or bodily injury to persons or damage to property

---

[3] In *Montgomery Elevator Co.*, the issue was "whether the exclusive liability provision of the Workers' Compensation Act, ORS 656.018(1), voids an agreement to purchase liability insurance." 100 Or App at 301. ORS 656.018(1) (1989) provided, in part:

"(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) [to provide workers' compensation insurance for subject workers] is exclusive and in place of all other liability arising out of compensable injuries to the subject workers * * * specifically including claims for * * * indemnity asserted by third persons from whom damages are sought on account of such injuries * * *.

"* * * * *

"(c) * * * [A]ll agreements or warranties contrary to the provisions of paragraph (a) of this subsection entered into after July 19, 1977, are void."

In a closely divided en banc decision, we concluded that that statute did not apply to "additional insured" agreements.

caused in whole or in part by the negligence of the indemnitee is void.

"(2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors."

It is undisputed that the exception described in subsection (2) does not apply in this case. We are concerned solely with the construction and application of subsection (1).

Neither ORS 30.140 itself nor any other contextually pertinent Oregon statute defines "indemnify." However, in standard usage, "indemnify" means

"[t]o restore the victim of a loss, *in whole or in part*, by payment, repair, or replacement. To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him. To make good; to compensate; to make reimbursement to one of a loss already incurred by him."

*Black's Law Dictionary* 692 (5th ed 1979) (emphasis added). Thus, ORS 30.140(1) encompasses agreements by which one party (or that party's insurer) is obligated to assume at least partial financial responsibility for the other party's liability.

That understanding is corroborated by the evolution of ORS 30.140(1). As originally enacted in 1973, the statute provided, in part:

"(1) Any provision in a construction agreement which requires a person to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused or contributed to by the negligence of the indemnitee in the design or by the sole negligence of the indemnitee in the inspection of the work that is the subject of the construction agreement is enforceable only if the indemnitee secures or maintains insurance covering such risks for the protection of the indemnitor.

"(2) In no event shall the indemnification obligation under such provisions be greater than the limits of the insurance secured by the indemnitee."

Or Laws 1973, ch 570, §§ 1, 2. Thus, initially, the statute permitted indemnification agreements in construction contracts but, in subsection (2), "capped" any such obligation by reference to the indemnitee's policy limits.

In 1987, the statute was amended to combine the original subsections (1) and (2) and to add a new subsection (2):

"(1)   Any provision in a construction agreement which requires a person to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused or contributed to by the negligence of the indemnitee in the design or by the sole negligence of the indemnitee in the inspection of the work that is the subject of the construction agreement is enforceable only if the indemnitee secures or maintains insurance covering such risks for the protection of the indemnitor. In no event shall the indemnification obligation under such provisions be greater than the limits of the insurance secured by the indemnitee.

"(2)   Notwithstanding subsection (1) of this section, any provision in a construction agreement which requires a person *or that person's surety or insurer to indemnify another against liability* for damage arising out of death or bodily injury to persons or damage to property caused by the sole negligence of the indemnitee is void."

Or Laws 1987, ch 774, § 25 (emphasis added). Thus, the critical statutory language in this case first appeared in the 1987 version of the statute—and then, as part of an exception to the general principle that an "indemnification" obligation was permissible. As with the original statute, "indemnification," in the 1987 version, was not an absolute and open-ended concept; rather, again, any "indemnification" obligation was necessarily limited by reference to the extent of the indemnitee's insurance coverage.

The pertinent portions of the statute underwent a final change in 1995.[4] The legislature deleted the prior subsection (1), altered and renumbered the prior subsection (2) as subsection (1), and added a new subsection (2):

---

[4] In 1997, the legislature amended subsection (3) of the statute, defining the term "construction agreement." Or Laws 1997, ch 858, § 1. That subsection in that amendment had no bearing on any issue presented here.

"**(1)** [*Notwithstanding subsection (1) of this section,*] **Except to the extent provided under subsection (2) of this section,** any provision in a construction agreement [*which*] **that** requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused **in whole or in part** by the [*sole*] negligence of the indemnitee is void.

"**(2)** **This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents' representatives or subcontractors.**

Or Laws 1995, ch 407, § 1 (new material in boldface; deleted material in italics and brackets).

Thus, the 1995 amendments essentially inverted the structure of the 1987 version of the statute. Whereas subsection (1) of the 1987 revision of the statute defined a universe of *permissible* indemnification provisions, subject to the "notwithstanding" exception set out in subsection (2), subsection (1) of the 1995 statute stated a general *prohibition* of indemnification provisions, subject only to the exception described in subsection (2). In addition, the general proscription, now embodied in subsection (1), was expanded to encompass agreements to indemnify for damages arising "in part" from the indemnitee's negligence. Notwithstanding that inversion and expansion, the statute remained constant in prohibiting agreements by which a party's insurer would be required to indemnify another party for damages arising from the latter party's negligence.

In sum, the text of ORS 30.140, and its historic evolution, strongly suggests that the statute prohibits not only "direct" indemnity arrangements between parties to construction agreements but also "additional insurance" arrangements by which one party is obligated to procure insurance for losses arising in whole or in part from the other's fault.

The legislative history of the 1995 amendments to ORS 30.140 confirms that understanding. The comments of Frank Morse, President of Morse Brothers Construction Co., the principal sponsor of the 1995 amendments, and Representative Larry Wells, a member of the House Commerce Committee, are particularly instructive. In a memorandum to the Senate Judiciary Committee, Morse framed the issue:

> "IF YOU CAN FORCE SOMEONE TO INSURE YOU FOR YOUR OWN ACTS OF NEGLIGENCE, WHAT REASON IS THERE TO CEASE TO DO SO? LEGISLATION IS THE ONLY ANSWER."

Exhibit A, Senate Committee on Judiciary, SB 788, Apr 3, 1995, 1. In testifying in a House subcommittee hearing, Morse explained:

> "Well, in terms as a contractor, we need to assume responsibility for our agents, our subcontractors, the people that are under our control. We don't think we ought to [be] an insurance company and providing insurance for the negligence of owners. That's our position.
>
> "* * * * *
>
> "* * * Owners can still require the contractors or the subcontractors to provide indemnification for their own actions and own negligence. The intent of the Bill is that we don't want to be an insurance company for the owner's acts of negligence."

Tape Recording, House Committee on Commerce, Subcommittee on Business, SB 788, May 2, 1995, Tape 75, Side A (statement of Frank Morse).[5] Wells summarized his understanding of the legislation:

---

[5] Plaintiff refers to other portions of Morse's testimony, which it asserts substantiate its view that ORS 30.140(1) prohibits only direct indemnification/"hold harmless" requirements but does not encompass insurance procurement requirements. We do not agree that, when read in context, those portions of Morse's testimony bear such a restrictive construction. We note, particularly, that plaintiff offers no plausible argument that squares its view of the statute generally—and of Morse's testimony particularly—with the statute's explicit "or that person's * * * insurer" language. If plaintiff's view were correct, there would be no need for that language. *See generally* ORS 174.010 (in construing statutes, courts are "not to insert what has been omitted, or to omit what has been inserted").

Plaintiff also refers to comments made during the 1997 legislative session by a party espousing an amendment to ORS 30.140(3). As noted, 189 Or App at 407 n 4, subsection (3) has no bearing on the present dispute.

"* * * [I]t seems like within the [construction] industry[,] the general on top, as he subs out down below, shoves the insurance liability down the line to the guy on the bottom[,] so that he must, in a sense, if he wants to contract[,] must cover insurance for the whole operation. Basically, this [bill] would require each level of the contract to have their own insurance[,] so that the other people don't have to indemnify people higher up that are not—that they are not responsible for."

Tape Recording, House Committee on Commerce, Subcommittee on Business, SB 788, May 4, 1995, Tape 33, Side A (statement of Rep Larry Wells).

The legislative history of the 1995 amendments demonstrates that ORS 30.140(1) was designed to prevent parties with greater leverage in construction agreements (generally, owners and contractors) from shifting exposure for their own negligence—or the costs of insuring against that exposure—to other parties (generally subcontractors) on a "take-it-or-leave-it" basis. Whether the shifting allocation of risk is accomplished directly, *e.g.*, by requiring the subcontractor itself to indemnify the contractor for damages caused by the contractor's own negligence, or indirectly, *e.g.*, by requiring the subcontractor to purchase additional insurance covering the contractor for the contractor's own negligence, the ultimate—and statutorily forbidden—end is the same.

We thus conclude that the additional insurance requirement of the construction agreement between plaintiff and Rust is void under ORS 30.140(1). Consequently, because plaintiff was not a legally cognizable additional insured under defendant's policy, defendant had no duty either to defend or to indemnify plaintiff.

Affirmed.