Argued and submitted June 4, on appeal, affirmed; on cross-appeal, reversed and remanded December 31, 2014, petition for review denied July 9, 2015
(357 Or 551)

SUNSET PRESBYTERIAN CHURCH,
an Oregon non-profit corporation,
*Plaintiff-Appellant
Cross-Respondent,*

*v.*

ANDERSEN CONSTRUCTION COMPANY,
an Oregon Corporation, et al,
*Defendant-Cross-Respondent,*

*and*

B & B TILE AND MASONRY CORPORATION,
a foreign corporation,
*Defendant-Respondent
Cross-Appellant,*

*and*

DELTA DRYWALL, INC.,
an Oregon corporation, et al,
*Defendants.*

ANDERSEN CONSTRUCTION COMPANY,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

DELTA DRYWALL, INC.,
an Oregon Corporation, et al,
*Third-Party Defendants.*

Washington County Circuit Court
C106643CV; A153158

341 P3d 192

Daniel T. Goldstein argued the cause for appellant-cross-respondent. With him on the briefs were Phillip E. Joseph, James C. Prichard, and Ball Janik LLP.

Thomas M. Christ argued the cause for respondent-cross-appellant. With him on the briefs were Cosgrave Vergeer Kester LLP, Julie L. O'Brien, and Wiles Law Group LLC.

No appearance for cross-respondent Andersen Construction Company.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

## HADLOCK, J.

This construction-defect case began when Sunset Presbyterian Church (Sunset) filed an action against its general contractor, Andersen Construction Company (Andersen). Andersen, in turn, filed a third-party complaint against its subcontractors, including B&B Tile and Masonry Corporation (B&B). Sunset and Andersen settled, and Andersen assigned its third-party claims against the subcontractors to Sunset. The subcontractors other than B&B settled, leaving Sunset (as Andersen's assignee) and B&B as the only litigants. Sunset dismissed all the claims against B&B except one, based on Andersen's subcontract with B&B, for breach of duty to defend Andersen against Sunset's action.

The trial court concluded that B&B had a contractual duty to defend Andersen against Sunset's allegations that might implicate B&B's negligence, but that ORS 30.140[1] voided the subcontract to the extent that it required B&B to defend Andersen against allegations of Andersen's or other subcontractors' negligence. Because Sunset did not prove what portion of Andersen's litigation costs Andersen incurred in defending against only those allegations that might implicate B&B's negligence, the court awarded Sunset zero dollars as damages. The court also declined to award Sunset the attorney fees that it had incurred in prosecuting the duty-to-defend claim. It entered a general judgment that identified Sunset as the prevailing party but that awarded Sunset no damages. Both parties appeal. On Sunset's appeal, we affirm; on B&B's cross-appeal, we reverse and

---

[1] ORS 30.140 provides, as relevant:

"(1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

"(2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors."

remand for entry of a judgment identifying B&B as the prevailing party.

The relevant underlying facts are few and undisputed. Sunset contracted with Andersen for phase-two construction of a church building. Andersen, in turn, entered into a subcontract with B&B under which B&B was to perform masonry. Article 12 of the subcontract, entitled "INDEMNIFICATION," provides, in part, as follows:

"12.1 SUBCONTRACTOR'S PERFORMANCE. To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Architect, the Contractor (including its affiliates, parents and subsidiaries) and other contractors and subcontractors and all of their agents and employees from and against all claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work provided that (a) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of the Subcontractor or anyone for whose acts the Subcontractor may be liable regardless of whether it is caused in part by a party indemnified hereunder, (b) such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12."

After the work was complete, Sunset brought this action, alleging that Andersen constructed the project and that it hired subcontractors to help with the project. Sunset alleged that it "has discovered new and recurring deficiencies in the work performed by Andersen, which deficiencies have caused and are causing water intrusion and resulting property damage." The specific allegations of deficient work included an allegation that "[a]rchitectural stone has been terminated at the level of the finish grade along the base-of-wall at hard surfaces, contrary to Owens Corning manufacturer installation instructions." Installation of the architectural stone was part of B&B's scope of work under the subcontract.

Andersen tendered the defense of Sunset's action to B&B and other subcontractors, all of whose subcontracts contained the same indemnity provision set out above. B&B and the other subcontractors declined Andersen's tender of defense, and Andersen then filed third-party claims against B&B and the other subcontractors.[2] Among other things, the third-party complaint alleged that each of the subcontractors had breached its subcontractual duty to defend.

Before trial, Andersen settled with Sunset and assigned Sunset its claims against the subcontractors. Sunset then moved for partial summary judgment on the duty and breach elements of the duty-to-defend claims, noting that it was "not seeking summary judgment on the amounts for which the [s]ubcontractors *** are liable." While the trial court had the motion for summary judgment under advisement, Sunset and the subcontractors settled all of Andersen's claims against the subcontractors except the duty-to-defend claim against B&B.

The trial court concluded:

"By contract, B&B has a duty to defend Andersen against any claims based on its work on the project. The duty to defend arose once a claim(s) had been made against Andersen and the claim(s) allege substandard work or damages *** which B&B *may* have been part of."

(Emphasis in original.) Accordingly, the court granted Sunset's motion for partial summary judgment on duty and breach.

At that point, the remaining question was the amount of damages caused by B&B's breach of its duty to defend Andersen. The parties chose to litigate that question through the procedure set out in ORCP 68 for determining costs and attorney fees. (The damages that Sunset sought were the attorney fees and costs that Andersen had incurred in litigating this action.) Sunset contended that B&B's defense obligation was to provide Andersen with a full

---

[2] Andersen also filed third-party claims against the manufacturer of the windows it used on the project. The duty-to-defend claim against the window manufacturer was based on a provision contained in a purchase order agreement, not a subcontract, and it is not at issue here.

defense against Sunset's action; accordingly, it requested all of the attorney fees and costs that Andersen had incurred during the litigation. Although the trial court indicated, both before and at the ORCP 68 hearing, that Sunset would need to prove which attorney fees and costs Andersen had incurred "as a result of defending the sort of things that B&B * * * is alleged to have done," Sunset declined to divide the fees and costs between allegations or claims involving B&B's work, other subcontractors' work, and Andersen's own work. B&B argued that, for a variety of reasons, Sunset was not entitled to recover any of Andersen's fees and costs.

The trial court ruled that, in light of ORS 30.140, the subcontract lawfully could require B&B to defend Andersen only to the extent that Sunset's allegations implicated B&B's work and, accordingly, B&B's possible negligence. Because Sunset's fee petition—the only proof of Andersen's damages that Sunset presented—did not divide Andersen's attorney fees and costs between allegations or claims, the court declined to award any fees or costs. Accordingly, the court entered a general judgment against B&B identifying Sunset as the prevailing party, but awarding Sunset zero dollars for the principal amount of the judgment, zero dollars for costs, and zero dollars for attorney fees. Subsequently, after both parties had filed their notices of appeal, the trial court issued an opinion letter denying B&B's petition for its attorney fees.

Sunset appeals, contending that the trial court erred in (1) failing to award it any damages on the duty-to-defend claim and (2) failing to award it its attorney fees incurred in prosecuting the duty-to-defend claim. B&B cross appeals, arguing that the trial court erred in (1) granting partial summary judgment to Sunset, (2) declaring Sunset the prevailing party, and (3) denying B&B's petition for its attorney fees.

As we will explain, we conclude that the trial court did not err in awarding Sunset no damages; thus, we reject Sunset's first assignment of error. Given that Sunset obtained no damages, B&B is correct when it argues, in its second assignment of error on cross-appeal, that it, not Sunset, was the prevailing party. That result, in turn, leads us to summarily reject Sunset's second assignment of error,

regarding its claimed entitlement to attorney fees, which rests on the incorrect assumption that it was the prevailing party. Those conclusions obviate the need to address B&B's remaining assignments of error on cross-appeal.[3]

We begin with Sunset's first assignment of error, in which it contends that the trial court erred in awarding it no damages. The first premise of Sunset's argument, with which the trial court agreed, is that B&B had a duty to defend Andersen under the subcontract. In the subcontract, B&B promised to hold Andersen harmless from claims "to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of" B&B. A promise to hold harmless "is generally held to include an obligation to defend, or to reimburse for the costs of defense, when an action within the terms of the agreement is filed against the indemnitee." *U. S. Fire Ins. Co. v. Chrysler Motors*, 264 Or 362, 369, 505 P2d 1137 (1973). Here, at least one of Sunset's allegations implicated B&B's scope of work under the subcontract. Accordingly, the trial court held, Sunset's complaint triggered B&B's contractual duty to defend Andersen.

The second premise of Sunset's argument is that the duty to defend always encompasses all of the claims in a complaint. The parties refer to that principle as the "defend-one-defend-all rule." Sunset observes that, although the rule developed in insurance law, we have held that it also applies to noninsurance indemnity agreements, where an indemnitor's duty to defend is "identical to that of an insurer." *St. Paul Fire & Marine v. Crosetti Bros.*, 256 Or 576, 580, 475 P2d 69 (1970) (*Crosetti*); *see also National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or App 560, 572-74, 188 P3d 332,

---

[3] We decline to address B&B's first assignment of error on cross-appeal, in which it argues that the trial court should not have granted Sunset's motion for partial summary judgment on the issues of duty and breach, because our disposition of the other assignments means that the grant of partial summary judgment has no practical effect on either party; in essence, that claim of error raises only a moot point. We also do not address B&B's third assignment of error on cross-appeal, which is premature. Because the trial court issued its opinion letter denying B&B's petition for attorney fees after B&B filed its notice of appeal, and B&B never appealed or amended its notice of appeal to reflect any subsequent appealable order or judgment, the question of what attorney fees may be due B&B is not properly before us. *See* ORS 20.220(1), (2); ORAP 2.20(2)(a). Given our conclusion that B&B, not Sunset, is the prevailing party, B&B's entitlement to attorney fees must be revisited on remand.

*rev den*, 345 Or 317 (2008) (*Starplex*) (if any allegation in the complaint could give rise to indemnity under the agreement, the indemnitor, like an insurer, has a duty to defend against all the claims in the complaint). Thus, Sunset argues, the trial court erred in holding that B&B's duty to defend Andersen was limited to only some of the allegations in the complaint. Sunset contends that Oregon law does not recognize a concept of "partial defense"; that is, once a contractual indemnitor's duty to defend arises, the indemnitor must defend the whole action.

The trial court disagreed with Sunset's second proposition, reasoning that ORS 30.140, a statute unique to construction agreements, creates an exception to the "defend-one-defend-all rule." ORS 30.140 provides, as relevant:

> "(1)   Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

> "(2)   This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors."

The trial court concluded that, given that statute, the provision of the subcontract in which B&B promised to hold Andersen harmless lawfully could require B&B to defend against only those allegations of property damage that might have been caused by B&B's own negligence. Many of Sunset's allegations against Andersen indisputably did not arise out of B&B's negligence because they involved allegedly defective work outside the scope of B&B's subcontract. Accordingly, the court reasoned, notwithstanding the applicability of the "defend-one-defend-all rule" in other contexts, the subcontract could not lawfully require B&B to defend all of the claims against Andersen.

On appeal, Sunset argues that the trial court misinterpreted ORS 30.140 to limit B&B's duty to defend Andersen. Sunset notes that the text of ORS 30.140 refers only to indemnity, which, in its view, does not include the duty to defend. B&B responds that ORS 30.140 limits the "defend-one-defend-all rule" in the context of construction contracts. B&B argues that the statute allows an indemnitor to promise to defend an indemnitee only against claims of harm allegedly caused by the indemnitor itself. Accordingly, in B&B's view, because some of Sunset's claims against Andersen were "unrelated to B&B's work and thus unrelated to B&B's negligence," the provision cannot require B&B to pay for Andersen's defense against all of the claims in the complaint.

Sunset's argument on appeal requires us to determine whether ORS 30.140 voided the subcontract to the extent that it required B&B to defend Andersen against *all* of Sunset's claims, including those based on Andersen's own negligence. Given our conclusion that it did, we need not decide the precise scope of that statutory limitation on indemnification provisions in construction agreements. That is, we need not determine whether ORS 30.140 voids only those provisions that require a subcontractor to defend against claims related to the indemnitee's negligence or whether the statute also voids provisions that require a subcontractor to defend against claims related to the alleged negligence of third parties—for example, other subcontractors. Because Sunset did not divide its request for attorney fees between any of the parties or claims, the answer to that question does not affect the outcome of this case.

We turn to the statutory-interpretation question. To determine the meaning of ORS 30.140, we apply the familiar method of statutory interpretation set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). To discern the legislature's intent, we begin by considering the text of the statute in context. Prior constructions of the same statute are relevant to our textual analysis. *State v. Bryan*, 221 Or App 455, 459, 190 P3d 470 (2008), *rev den*, 347 Or 290 (2009). We also consider legislative history to the extent that it appears useful. *Gaines*, 346 Or at 172.

With the exception set out in subsection (2), ORS 30.140 voids "any provision in a construction agreement that requires a person * * * to indemnify another against liability for * * * damage to property caused in whole or in part by the negligence of the indemnitee." ORS 30.140(1). We must determine whether that text limits an indemnitor's duty to defend the indemnitee. In arguing that it does not, Sunset notes that the duty to defend arises when "a claim is made against an indemnitee for which he is entitled to indemnification * * * regardless of whether the indemnitee is ultimately held not liable." *Crosetti*, 256 Or at 579. By contrast, the duty to indemnify exists only to the extent that the indemnitee *is* ultimately held liable on such a claim. *See Starplex*, 220 Or App at 574. In Sunset's view, those different standards demonstrate that the duty to defend is different from and much broader than the duty to indemnify. Accordingly, Sunset argues, because ORS 30.140 refers explicitly only to limits on contracts to "indemnify," the statute does not likewise limit the indemnitor's duty to defend.

The problem with Sunset's argument is that, despite the fact that the duty to defend arises earlier than the duty to indemnify—when the claim is made rather than when the indemnitee is held liable—the two duties are intimately related and even overlap. Indeed, we sometimes use the term "indemnify" to refer to both the indemnitor's obligation to pay damages that the indemnitee is obliged to pay as a result of a third party's claims and to the indemnitor's duty to defend against those claims. *See, e.g.*, *Valley Inland Pac. Constructors*, 43 Or App at 539 (in contractual indemnity case, a promise to defend was a promise "to indemnify"); *Eclectic Investment, LLC v. Patterson*, 261 Or App 457, 459 n 1, 323 P3d 473, *rev allowed*, 355 Or 751 (2014) (in common-law indemnity, "one defendant can receive indemnification from another for the cost of defending the claim" under certain circumstances); *Smith v. Urich*, 151 Or App 40, 43 n 2, 947 P2d 1125 (1997) (in common-law indemnity action, referring to "a claim for indemnity for the expense of defending [a third party's] action"); *see also United Pac. Ins. v. Sunset Cove*, 263 Or 303, 307, 502 P2d 261 (1972) (a person may discharge a duty to defend another person by actually defending the other person or by paying "the reasonable

costs of defense"); *U. S. Fire Ins. Co.*, 264 Or at 369 (same). As Sunset itself points out in defense of the "defend-one-defend-all rule," the existence of a duty to defend depends on "whether the allegations fall within the *indemnifying* language" of the contract. (Emphasis in original.) That is, the promise to indemnify triggers the duty to defend and determines its scope. Thus, a "provision * * * that requires a person * * * to indemnify another against liability" carries with it the duty to defend; absent the promise to indemnify, there would be no such duty.

In our view, that common, expansive understanding of the term "indemnify" suggests that the legislature's use of that word in ORS 30.140 does not compel a conclusion that the statute limits only the scope of indemnitors' responsibility to pay damages, and not also the scope of their promises to defend claims brought against their indemnitees. Indeed, a more expansive reading of the statutory limitation is suggested by the Supreme Court's holding in *Walsh Construction Co. v. Mutual of Enumclaw*, 338 Or 1, 104 P3d 1146 (2005) (*Walsh II*). There, the question was whether ORS 30.140 prohibited a promise by a subcontractor to list the general contractor as an additional insured on the subcontractor's liability insurance policy. The Supreme Court adopted our conclusion that ORS 30.140 prohibits general contractors from "'requiring the subcontractor to purchase additional insurance covering the contractor for the contractor's own negligence.'" *Walsh II*, 338 Or at 10 (quoting *Walsh Construction Co. v. Mutual of Enumclaw*, 189 Or App 400, 410, 76 P3d 164 (2003) (*Walsh I*)). Although that holding required a broad interpretation of the meaning of "indemnify" in ORS 30.140(1), the court concluded that the legislature intended that result because requiring the subcontractor to purchase insurance to protect the contractor for the contractor's own negligence would indirectly accomplish the same "'ultimate—and * * * statutorily forbidden—end'" as "'requiring the subcontractor itself to indemnify the contractor for damages caused by the contractor's own negligence.'" *Id.* (quoting *Walsh I*, 189 Or App at 410).

Here, requiring the subcontractor to pay the cost of defending the contractor against allegations of the

contractor's own negligence would cause a problem similar
to the one caused by requiring the subcontractor to pay the
resulting judgment against the contractor: it would shift
the contractor's exposure for its own negligence to the sub-
contractor. In light of the relationship between a promise to
indemnify and a duty to defend, we conclude that the legis-
lature did not intend that result. Thus, we reject the conten-
tion that the legislature intended to protect subcontractors
from agreements requiring them to indemnify general con-
tractors against damages caused by the general contractors'
negligence, but nonetheless intended that general contrac-
tors still be permitted to require subcontractors to defend
them against claims for such damages.

Sunset points out that another statute in ORS
chapter 30 provides that "[t]he governing body of any pub-
lic body shall defend, save harmless and indemnify any of
its officers, employees and agents" against certain claims
and demands. ORS 30.285(1). Given that text, Sunset
argues that "[t]he [l]egislature knows how to distinguish
between the duty to defend and the duty to indemnify, and
it only included the duty to indemnify in ORS 30.140." That
argument is unconvincing given the difference in the two
provisions' text and context. ORS 30.285(1) imposes a par-
ticular duty—worded in the traditional formulation of an
indemnity provision—on government bodies. By contrast,
ORS 30.140(1) places limits on indemnity provisions that
appear in construction contracts. We do not disagree with
Sunset that the legislature could have drafted ORS 30.140
by describing precisely the specific promises to which it
applies—that is, in the traditional formulation of a prom-
ise to indemnify. However, the legislature did not do that.
Instead, ORS 30.140 applies to certain contractual "provi-
sion[s]," and, as explained above, those provisions trigger
and define the duty to defend. In sum, we disagree that the
wording of ORS 30.285(1) shows that ORS 30.140(1) does
not apply to the duty to defend.

The legislative history of ORS 30.140 confirms our
conclusion that ORS 30.140 limits a subcontractor's duty
to defend the general contractor. In 1995, the legislature
restructured and substantively amended ORS 30.140. *See*
Or Laws, 1995 ch 704, § 1; *see also Walsh II*, 338 Or at 7-9

(discussing evolution of ORS 30.140). As we explained in *Walsh I*, Morse Brothers Construction Co. was the principal sponsor of the 1995 amendments. 189 Or App at 409. Steve Frey, controller of Morse Brothers, testified about the impetus for the bill. Minutes, Senate Judiciary Committee, SB 788, Apr 3, 1995, 3. Morse Brothers had been a subcontractor on a large paving project; it had been responsible only for paving certain lanes on the highway. Tape Recording, Senate Judiciary Committee, SB 788, Apr 3, 1995, Tape 83, Side A (statement of Steve Frey). Two years after Morse Brothers' work was complete, the prime contractor had tendered to Morse Brothers defense of an action arising from an auto accident that was apparently related to the design of the project, with which Morse Brothers had not been involved. *Id.* Frey explained that Morse Brothers had had to pay to defend the action and pay a large award of damages. *Id.* Morse Brothers' performance of its subcontract was not at issue; its only relationship to the action was through the contractual provision in which it had agreed to defend and indemnify the prime contractor for the prime contractor's own negligence. *Id.*

Frey also testified that, although Morse Brothers had attempted to negotiate the indemnity provisions of its contracts, it had often found that its contracting partners would not remove provisions requiring it to indemnify them for their own negligence. As Frank Morse, president of Morse Brothers, explained, "If you can force someone to insure you for your own acts of negligence, what reason is there to cease to do so? Legislation is the only answer." Testimony, Senate Judiciary Committee, SB 788, Apr 3, 1995, Ex A (statement of Frank Morse) (capitalization modified). Before a subcommittee of the House of Representatives Committee on Commerce, Morse explained that the issue was "a matter of fairness." Tape Recording, House Commerce Sub-Committee on Business, SB 788, May 2, 1995, Tape 75, Side A (statement of Frank Morse). Thus, as we explained in *Walsh I*, "ORS 30.140(1) was designed to prevent parties with greater leverage in construction agreements (generally, owners and contractors) from shifting exposure for their own negligence * * * to other parties (generally subcontractors) on a 'take-it-or-leave-it' basis." 189 Or App at 410.

Morse Brothers' experience—having to defend and pay damages in an action against the prime contractor for the prime contractor's own negligence—inspired the legislature to enact ORS 30.140(1) in its current form. The purpose was to remedy what the legislature perceived to be an unfair situation: Owners and general contractors were forcing subcontractors to accept "exposure for [the owners' and general contractors'] own negligence" as part of the cost of doing business. 189 Or App at 410. Part of that exposure, as explained by Morse Brothers, was the cost of defending the action against the contractor. The legislature's decision to prevent that "shifting exposure" supports our conclusion that the legislature intended ORS 30.140 to limit a subcontractor's duty to defend the general contractor. Thus, the trial court did not err in concluding that ORS 30.140 prevented Sunset from recovering the full amount of Andersen's damages.

Sunset next argues that, if ORS 30.140 prevents B&B from being liable for the full amount that Andersen incurred in defending Sunset's claims, we should remand for the trial court to allocate the attorney fees and costs between those related to Andersen's negligence and those related to the negligence of B&B and other subcontractors. We decline to do so.

Sunset had the burden of proving its damages on any particular theory. *See, e.g., Valley Inland Pac. Constructors,* 43 Or App at 539 (where the plaintiff failed to segregate its proof of damages between those it could recover and those it could not, the trial court did not err by declining to award any damages). Despite the trial court's repeated statements that Sunset would need to prove which damages Andersen had incurred defending against allegations that might implicate B&B's work, Sunset chose to prove only the full amount of fees and costs that Andersen had incurred in the litigation as a whole, on the theory that Sunset was entitled to the full amount. If Sunset had an alternative theory—like the one it now presents—it bore the burden of offering proof of its damages, or an explanation of how the damages should be divided, to the trial court on that theory as well. To the extent that Sunset contends that, because the parties were litigating the issue of damages under ORCP 68, the

trial court could have, but erroneously chose not to, segregate Andersen's fees in accordance with its conclusion about the operation of ORS 30.140, we respond that Sunset did not ask the court to do so. We will not remand for Sunset to prove its case on an alternative theory that it could have pursued before judgment was entered. The trial court did not err in awarding Sunset no damages.

We turn to B&B's second assignment of error on cross-appeal. B&B contends that it obtained a favorable judgment and, consequently, was the prevailing party, because Sunset sought damages and obtained none. Accordingly, B&B argues, the trial court erred in entering a judgment that purported to be in favor of Sunset and that declared Sunset the prevailing party. We review a trial court's decision regarding a party's entitlement to attorney fees for errors of law. *Morgan v. Goodsell*, 198 Or App 385, 390, 108 P3d 612 (2005); *see also 16th Group, LLC v. Lynch Mechanical Construction*, 265 Or App 217, 219-21, 334 P3d 988 (2014) (under ORS 20.277, concluding that the plaintiff prevailed as a matter of law and, consequently, the trial court erred in awarding attorney fees to the defendants).

The subcontract provides that, in any dispute regarding breach of the subcontract, "the prevailing party shall be entitled to recover" attorney fees. The subcontract does not define "prevailing party"; accordingly, ORS 20.077(2) provides the relevant definition: "[T]he prevailing party is the party who receives a favorable judgment or arbitration award on the claim." *See Beggs v. Hart*, 221 Or App 528, 536-37, 191 P3d 747 (2008) (the definition of "prevailing party" in ORS 20.077(2) applies to a contractually authorized attorney-fee award to the prevailing party); *16th Group, LLC*, 265 Or App at 219 ("Absent a contrary indication, the parties [to a contract] are presumed to refer to ORS 20.077 for the meaning of 'prevailing party[.]'"). We determine which party has obtained a favorable judgment on a claim-by-claim basis, ORS 20.077(2), by "weigh[ing] 'what was sought by each party against the result obtained.'" *Beggs*, 221 Or App at 537-38 (quoting *Lawrence v. Peel*, 45 Or App 233, 243, 607 P2d 1386 (1980)).

Here, Sunset sought damages from B&B. Although the trial court concluded that B&B did have a duty to defend Andersen against claims that might implicate B&B's negligence, and B&B breached that duty, it awarded Sunset no damages. As we explained in *Spectra Novae, Ltd. v. Waker Associates, Inc.*, 140 Or App 54, 60, 914 P2d 693 (1996), "[A] determination of liability without a corresponding finding of damages is insufficient to establish that a party has prevailed on its breach of contract claim." Sunset did not obtain what it sought. Accordingly, it did not prevail; rather, B&B prevailed by defending successfully. The trial court erred in entering a judgment in favor of Sunset and declaring Sunset the prevailing party.

On appeal, affirmed; on cross-appeal, reversed and remanded.